**Robert S. INMAN, Individually, and as Co-Executor of the Estate of James Frank Inman, Deceased, James Edward Inman and Mary Joyce Behla, Plaintiffs-Appellants,**

**v.**

**UNION PLANTERS NATIONAL BANK, Individually and as Co-Executor of the Estate of James Frank Inman, Deceased, and Annabell Inman, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

March 10, 1982.

Application for Permission to Appeal Denied by Supreme Court June 1, 1982.

David E. Caywood and James F. Arthur, III, Memphis, for plaintiff-appellant Robert S. Inman.

Fyke Farmer, Nashville, for plaintiffs-appellants James Edward Inman and Mary Joyce Behla.

W. Thomas Hutton and Clare M. Orman, Memphis, for defendant-appellee Union Planters National Bank of Memphis.

James D. Causey, Memphis, for defendant-appellee Annabell Inman.

NEARN, Judge.

The successful plaintiffs in this suit have appealed various features of the Chancellor's decree awarding them specific performance of a contract to purchase real estate.

In early February, 1972, transactions were completed in which James Frank Inman contracted to sell two tracts of land to his son, Robert S. Inman, and Robert S. Inman assigned one-third interests in the contract to his siblings, James Edward Inman and Mary Joyce Inman Behla. The contract was to be performed within sixty days from its execution. Before the contract was performed, James Frank Inman died. He left a will setting up testamentary trusts with life estates for his wife, Annabell Inman, the step-mother of the offspring mentioned above. The will appointed Robert S. Inman and Union Planters National Bank as co-executors of the estate. Although steps were taken to perform the land sale contract, that sale never took place.

On February 29, 1972, James Edward Inman filed a Bill for Declaratory Judgment that sought, among other things, a declara-

tion that the real estate in question was worth more than double the contract price and that the difference was a gift by the deceased to his children. As a result of this lawsuit, the Bank informed Annabell Inman that, because of gift and estate taxes, her beneficial interest in the estate could be adversely affected and that she should seek independent counsel.

On March 13, 1972, Robert Inman filed the present suit for specific performance of the land sale contract. In May, 1979, a trial was held in which Robert Inman, James Edward Inman, and Mary Joyce Behla were aligned as plaintiffs, and Annabell Inman and the Union Planters National Bank, as co-executor of the James Frank Inman Estate, were the defendants. Annabell Inman, as a beneficiary of the estate, was individually represented at the trial and sought recission of the contract on the grounds that her husband had been overreached in the formation of the contract and that the consideration was so inadequate as to shock the conscience of the Court. The Chancellor found that the deceased had not been overreached, was fully aware of the value of his property, and freely and knowingly entered into the contract for the benefit of his children. Accordingly, on April 14, 1980, the Chancellor ordered specific performance.

Unfortunately, the matter was not so easily concluded. Various post-trial motions were filed and among them the Chancellor was requested by the Bank to order specific terms for the closing of the contract. On January 30, 1981, the Chancellor issued a Final Decree that computed the cash balance due on the contract and ordered that sum to be paid to the estate in exchange for the property. The original sale price had been $524,000.00. Because of an intervening consensual sale of a portion of the land, which proceeds were placed in escrow pending the litigation here, the remaining cash balance due was $222,397.25.

The issues raised by appellant Robert S. Inman are: (1) whether the Chancellor erred in overruling appellant's motion for new trial sought on the grounds that the Chancellor's decree did not compensate appellant for monetary losses occasioned by the delay in performance of the contract, and (2) whether the Chancellor erred in requiring the entire purchase price to be paid at closing, in light of the original contract term, which provided for deferred payments.

The issue raised by appellants James Edward Inman and Mary Joyce Behla is whether the Chancellor erred in denying appellants' petition to modify the final decree to (1) provide for payment of purchase price by equitable set-off of their interest in the estate, and (2) to order removal of the administration of the estate from the Probate Court to the Chancery Court, and (3) for appointment of an administrator *ad litem*.

The first issue raised by Robert S. Inman is without merit. Appellant is correct that the Chancellor's decree did not compensate appellant for monetary losses alleged to have occurred because of the delay in performance of the contract. However, as the Chancellor found in denying the motion for new trial, no evidence was presented at the trial, or in connection with the motion for new trial, in support of damages in addition to specific performance. Without proof of damages, there can be no award of damages. See *Krause v. Taylor*, (1979 Tenn.) 583 S.W.2d 603.

Robert S. Inman's second issue is in regard to the Chancellor's requirement that the balance of the purchase price be paid in cash. The original contract sued upon provided that the balance of the purchase price was to be paid by notes secured by a mortgage, which notes were to be paid in five years with interest on each note at 5½% interest payable annually.

Ordinarily, a decree for specific performance will enforce a contract as it was made by the parties. In order to explain why we agree with the Chancellor's denial of the equitable remedy of specific performance in so far as the payment term of this contract, we first mention the pertinent facts on this issue.

Appellant's suit for specific performance was filed promptly upon the Bank's refusal to perform the contract. The Bank's answer stated that while the Bank considered the contract to be a valid and binding obligation of the estate, the Bank was also aware of the objections to the contract raised by Annabell Inman, and therefore the Bank believed it should not perform the contract without further instructions from the Court. The Bank also moved the Court to add as indispensable parties all of the potential beneficiaries of the estate, which the Chancellor did. Annabell Inman's answer to appellant's suit did in fact request that the Court declare the contract null and void. These pleadings and motions were all filed in 1972.

The next document appearing in the record is the Bank's Motion to Dismiss for Lack of Prosecution, filed on November 27, 1978. No order on this motion appears in the record, but the trial was held in May, 1979. No reason for the delay of seven years in bringing the suit to trial appears on the record. The record does reflect that in 1974 a settlement was apparently attempted, involving the dismissal of this lawsuit and performance of the contract but the attempt did not attain fruition.

Finally, we note that performance of the contract to require that the estate in effect issue appellant a 5½% five-year mortgage, while probably not an unreasonable term in 1972, would in 1982, given current rates of interest, confer a windfall on appellant, not contemplated when the contract was made, and constitute a significant detriment to the estate. The record shows that the 5½% interest term was decided upon after negotiations between father and son. The contract contemplated a reasonable return on the purchase money mortgage to be executed in 1972, not an opportunity for the purchasers to reap a profit from the credit provision at the expense of the seller.

■ Appellant has come into the Chancery Court seeking the extraordinary equitable remedy of specific performance. Having done so, he is subject to the equitable maxim that he who seeks equity must do equity. As Chancellor Gibson has put it, he must pay the price of the decree the Court gives him. *Gibson's Suits in Chancery* § 16 (6th ed. 1982). Accordingly, the Chancery Court may, in its discretion, "adjust the equities of complainant to the equities of defendant and thus do complete justice between the parties." *Franklin v. Jones*, (1946) 28 Tenn.App. 528, 191 S.W.2d 835.

In considering the equities of the parties in this case, we also note the equitable maxim that equity aids the vigilant, not those who sleep on their rights. See, e.g., *Winter v. Allen*, (1933) 166 Tenn. 281, 62 S.W.2d 51. While the initial delay in performance of the contract was caused by the refusal of the estate to perform, the delay in bringing this lawsuit to trial must, on the record, be attributed to the appellant. The delay of seven years has resulted in a material difference in the particular contract term appellant seeks to enforce on this appeal.

As the Court explained in *Cocke v. Evans' Heirs*, (1836) 17 Tenn. 218, 226 (citations omitted),

> In order to entitle a party to a specific performance of a contract, it must be fair, certain, just, equal in all its parts, and for an adequate consideration. A specific performance of a contract will not be decreed where it is hard or unreasonable in itself, or where, from material change of circumstances since the contract, the performance would be attended with any particular hardship.

> To entitle the complainant to the specific performance of a contract, it must appear, not only that the contract was in all respects full, fair, and honest in the beginning, but that the performance of it may be fairly and conscientiously required.

> The court will not interfere to decree a specific performance if there be suspicion of unfairness, or if it would be a hardship on the defendant.

See also *Willard v. Tayloe*, (1869) 75 U.S. (8 Wall.) 557, 19 L.Ed. 501, in which the Court conditioned specific performance of a land

sale contract upon payment of the price in gold or silver coin, although the contract did not specify payment in gold or silver. At the time the contract was executed, gold and silver or bank notes convertible into it were the ordinary money of the country. At the time for performance, Congress had made notes of the United States legal tender for debts. However, the notes were at the time greatly depreciated in value and the defendant-vendor refused to accept payment in notes. The plaintiff-vendee sued for specific performance. The Court, after deciding that specific performance should be decreed, stated:

> The only question remaining is, upon what terms shall the decree be made? And upon this we have no doubt.
>
> The parties, at the time the proposition to sell, embodied in the covenant of the lease, was made, had reference to the currency then recognized by law as a legal tender, which consisted only of gold and silver coin. It was for a specific number of dollars of that character that the offer to sell was made, and it strikes one at once as inequitable to compel a transfer of the property for notes, worth when tendered in the market only a little more than one-half the stipulated price. Such a substitution of notes for coin could not have been in the possible expectation of the parties. Nor is it reasonable to suppose, if it had been, that the covenant would ever have been inserted in the lease without some provision against the substitution. The complainant must, therefore, take his decree upon payment of the stipulated price in gold and silver coin. Whilst he seeks equity he must do equity.

*Id.* at 573–574. In *Willard v. Tayloe,* circumstances and time changed the value of the purchase money consideration specified in the contract. The principle of *Willard v. Tayloe* is equally applicable here where circumstances and time have changed the value of the purchase money notes contemplated as payment. See also, *New River Lumber Co. v. Tennessee Ry. Co.,* (1922) 145 Tenn. 266, 238 S.W. 867, wherein it was held that the court must consider the entire situation and act on its discretion and will not specifically decree the performance of a contract shown to be harsh or inequitable, even though the pleadings did not raise that issue.

■ We find that it was within the equitable power of the Chancellor to take cognizance of the delay and the changed circumstances affecting the bargain contemplated when this contract was executed and it was within his discretion to withhold specific performance of the credit terms of the contract.

■ Appellants James Edward Inman and Mary Joyce Behla filed a post-trial petition to "Amend and Modify Final Decree to Provide for Payment of Purchase Price by Equitable Set Off of Their Interest in the Estate, to Order Removal of the Administration of the Estate from the Probate Court, and for Further and Additional Incidental Relief." The Chancellor found that the issues raised in that petition had previously been litigated by the appellants in other courts and there were no grounds for consideration of those issues by the court in the present lawsuit. We agree with the Chancellor and find that the petition is merely an attempt to relitigate matters previously determined and now barred by the doctrine of res judicata. As to equitable set-off, the case of *Union Planters National Bank v. Inman,* (1979 Tenn.App. W.S.) 588 S.W.2d 757, in which appellants challenged their father's will, determined that the testamentary trust provisions of James Frank Inman's will were valid. Therefore, the appellants are only potential beneficiaries of the estate and have no interests at this time to set off. Appellants' request to transfer administration of the estate from the Probate Court to Chancery Court has previously been made, denied, and the denial affirmed by this Court in the unreported case of *Inman v. Union Planters National Bank,* (1981 Tenn.App.W.S.), filed March 18, 1981. Finally, appellants' grounds asserted for appointment of an administrator *ad litem* were resolved first in the will contest cited above, and second in

*In re Estate of Inman,* (1979 Tenn.App. W.S.) 588 S.W.2d 763. The issues presented for review by James Edward Inman and Mary Joyce Behla are found to be without merit.

In accordance with the above, the Order of the Chancellor is affirmed in all respects.

The Bank's Motion for damages for frivolous appeal pursuant to T.C.A. § 27–1–122 is denied.

Costs are adjudged against appellants and surety.

MATHERNE and SUMMERS, JJ., concur.