# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 1, 2004 Session

## JERRY C. HARLAN v. CAROL L. SOLOMAN

**Appeal from the Chancery Court for Williamson County**
**No. I-26305      Donald P. Harris, Chancellor**

---

**No. M2003-01396-COA-R3-CV - Filed January 19, 2005**

---

This appeal comes to the court from the trial court's approval of a special master's report. The case was referred to a special master following a jury trial after which appellee Harlan was awarded 16.79% ownership in certain real property which appellant Soloman had purchased. The report did not consider depreciation and other deductions which Harlan had claimed in connection with his alleged ownership of the property. After the court adopted the report Soloman moved to amend the order, arguing that she was entitled to an 83.21% share of those deductions, and that the trial court should amend the report to conform with the motion. The trial court refused. Soloman appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellant, Carol L. Soloman.

Gregory H. Oakley, Nashville, Tennessee, for the appellee, Jerry C. Harlan.

## MEMORANDUM OPINION[1]

Carol Soloman is the purchaser-of-record of three tracts of real property in Madison, Tennessee in a transaction occurring in October 1995. In 1999, Jerry Harlan, a business associate of Ms. Soloman's then-husband, Dunklin Murrey, filed suit against Ms. Soloman in the Chancery Court for Williamson County claiming an interest in the property and demanding a share of the proceeds from the rental of the property. He asserted that he, Mr. Murrey, and Ms. Soloman had

---

[1]Tenn. Ct. App. R. 10 provides:

> The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

agreed that he and Mr. Murrey would be the beneficial owners of the property and that Ms. Solomon's role was limited to providing the financing for the purchase.

Ms. Soloman filed an answer and counterclaim denying Mr. Harlan's allegations regarding their business arrangements and asserting that all the revenue from the property belonged to her. In his answer to Ms. Soloman's counterclaim, Mr. Harlan asserted that she held the property as trustee for a partnership that included him, Mr. Murrey, Ms. Soloman, and two other persons.

Following a trial on July 16-18, 2002, a jury returned a verdict for Ms. Soloman. In its answers to special interrogatories, the jury specifically determined (1) that Ms. Soloman had not expressly agreed to a "nominal title holder" of the property, (2) that Ms. Soloman had no knowledge that Mr. Murrey had agreed on her behalf that she would be the "nominal title holder" of the property, and (3) that Mr. Harlan had contributed $31,274.40 of his personal funds toward the purchase of the properties. Because it was undisputed that the parties had invested $186,268 in the properties, the trial court, following the jury's verdict, determined that Ms. Soloman owned 83.21% of the properties and that Mr. Harlan owned 16.79% of the properties.

The trial court also referred the matter to the clerk and master to prepare an accounting of the rents, expenses, materials provided, and services rendered by the parties. The clerk and master conducted a hearing on November 14, 2002 and issued a report on January 24, 2003, concluding that Mr. Harlan's net profit from the properties had been $9,470. The report also stated that "[t]he above accounting does not address issues regarding income tax deductions, including but not limited to, depreciation and interest." Neither party objected to the clerk and master's report, and the trial court confirmed it on February 11, 2003.

Thereafter, both Ms. Soloman and Mr. Harlan moved to amend the special master's report. For her part, Ms. Soloman insisted that "a determination needs to be made regarding the income tax implications of the divided ownership interest in this property in that Mr. Harlan was credited with depreciation and certain deductions that Ms. Soloman feels she is entitled to." The trial court heard both motions on April 14, 2003, and entered an order and final judgment denying them on April 30, 2003.

The sole issue Ms. Soloman raises on this appeal is that the trial court erred by not awarding her a portion of the "interest deductions and depreciation" on the properties that had been claimed by Mr. Harlan. We have determined that Ms. Soloman lost her chance to make this claim when she failed to object to the clerk and master's report before the trial court confirmed it on February 11, 2003.

No party appeals the jury verdict, and while Dunklin Murrey is listed as an appellee on the notice of appeal, no relief is sought against him in the appeal.[2]

---

[2]While Scott Rudolph and Cherie Rudolph were named as complainants in the second amended complaint filed by Harlan and were named as counter-defendants in the counter-complaint of Carol Soloman, they subsequently nonsuited their claim as plaintiffs, and no relief is sought against them on this appeal.

The issues before this court on appeal are limited to the refusal of the trial court to consider the questions raised by Carol Soloman's motion of March 12, 2003, relative to the failure of the special master's report to include income tax deduction including depreciation and interest deductions for 1996 and 1997.

What appellant seeks on this appeal is to have the court decree that Harlan reimburse her for an amount equal to 83.21% of the income tax savings that would result from depreciation and interest deductions on Schedule E of Federal income tax returns for the years 1996 and 1997. Appellant cannot prevail on this appeal for a number of reasons.

First of all, she did not object to the trial court's order of August 14, 2002 referring the case to a special master following the jury verdict. This reference directed the special master to take an accounting which would include ". . . the income and expenses reported on the income tax returns for the relevant years for both of the parties." When the special master filed her report on January 24, 2003, it showed on its face that "the above accounting does not address issues regarding income tax deductions, including but not limited to depreciation and interest."

In addition, no timely objection was filed by Soloman to the report of the special master. On February 11, 2003, the trial court entered its order stating, "Upon review and consideration of the Special Master Report and no objections having been filed, the Court finds the Special Master's Report should be confirmed and incorporated fully herein as the Order of the Court." Ms. Soloman did not file her motion objecting to the special master's exclusion of tax deduction for depreciation and interest in the course of her report until March 12, 2003, a full month following the trial court's approval of the special master's report.

This court has held, "A party cannot wait until after the trial court has conducted its hearing and ruled on the master's report to raise new objections to the report. *Smith v. Frazier*, 189 Tenn. 71, 78, 222 S.W.2d 367, 370 (1949); *Huntingdon v. Lumpkin*, 39 Tenn. App. 151, 281 S.W.2d 403, 407 (1954); . . ." *Joe H. Parks v. George Eslinger, et al.*, M1999-02027-COA-R3-CV, 2003 WL 237597, *6 (Tenn. Ct. App. Feb. 4, 2003).

In a circumstance similar to the case at bar the Tennessee Supreme Court held:

> It would seem on principle that when Frazier proceeded on, co-operated with and acted under the order of reference without exception until the issue had been determined against him upon that order by the master and then by the chancellor, he is thereby estopped from then insisting for the first time that the order should never have been entered.

*Smith v. Frazier*, 222 S.W.2d at 369.

The question raised on this appeal is clearly within the order of reference of August 14, 2002. With equal clarity the report of the special master of January 24, 2003 shows that she did not consider these matters in making her report. No objection was made until a month after the trial

court had confirmed the report of the special master. The issue presented on this appeal has been waived by appellant. *See Smith v. Frazier*, 222 S.W.2d at 370.

Even if appellant could bypass the special master and take this issue directly to the trial judge the record before the court provides no basis for appellate relief. Her motion seeking credit for interest and depreciation deductions for 1996 and 1997 was heard before the trial court on April 14, 2003 with the order and final judgment following this hearing and providing in part, "the defendant contended that she was the proper person to take credit for 83.21% of those deductions and requested a $65,870.49 judgment for her inability to take such credits." No record of this April 14, 2003 hearing is preserved for appellate review and at the bar of this court nobody can explain where this $65,870.49 figure came from.

By any logical analysis appellant could not "take credit" for 83.21% of interest and depreciation deductions for 1996 and 1997 without simultaneously being charged on her tax returns with 83.21% of the income from the properties. Despite the fact that she knew that she was the record owner of the properties in 1996 and 1997 and denied that a contract ever existed between Harlan and Soloman, she did not report on her federal tax returns for 1996 and 1997 anything about the properties at issue. She reported neither income from the properties nor claimed any deductions relative to the properties. While copies of Schedule E to the 1996 and 1997 joint tax returns filed by Dunklin Murrey and Carol L. Soloman were entered into evidence as Exhibit 24 in the trial before the jury, such documents were never submitted in the hearing before the special master. Nothing in the record on appeal discloses whether or not the special master ever reviewed the 1996 and 1997 income tax returns of Dunklin Murrey and Carol Soloman. Review of the tax returns of Jerry Harlan could not provide a basis for determining the financial effect of interest and depreciation deductions on Carol Soloman. Such returns would only disclose the raw figures for interest and depreciation deductions but would establish nothing as to the financial effect of such deductions when 83.21% of the income from the properties in 1996 and 1997 were added to the income of Carol Soloman for those two years.

Going beyond the special master to the final hearing before the court of April 14, 2003, we have no record of anything that occurred during that hearing. It is the duty of the appellant to preserve the record before the trial court in such a form that this court can conduct a de novo review of the facts. In the absence of an adequate testimonial record this court is powerless to review the facts, and the judgment of the trial court will not be disturbed. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

A party seeking damages has the burden of proving damages. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). No competent proof of damages exists in this case.

Still another reason exists in this record for denying appellate relief. The record is clear that the appellant discovered her plight in this case in 1998. She had ample time to amend her tax returns for 1996 and 1997 as indeed she did amend her tax returns for 1998.

Appellant testified:

> Q.      But you also testified, Ms. Soloman, did you not, that you signed these income tax returns that Mr. Murrey was preparing with you accountant and filing year after year and you didn't review them?
>
> A.      Yes.
>
> Q.      You said that in your deposition also, you didn't review the income tax returns before you signed them?
>
> A.      Yes, and as soon as I found out in 1998, I filed to amend it. I could not file any further back because I would have had to do it with him and I could not do that. But in 1998 I filed separately and amended it in 1998.

So it is that appellant was thwarted in her ability to amend her tax returns for 1996 and 1997 in order to report everything about the property that she owned including income therefrom and the interest and depreciation deductions in issue on this appeal. She was thwarted in this respect not by any act of Jerry Harlan but, rather, by the fact that she and her then husband Dunklin Murrey had filed joint tax returns for those years. The record shows no effort to take this entire matter up with the Internal Revenue Service where it rightfully belonged -- only an effort to compel Jerry Harlan to reimburse her for some amount too speculative to admit of reasonable proof. There is no evidence in the record as to the results of any effort to project what the effect of hypothetical amended tax returns filed on an individual basis for 1996 and 1997 would have on overall liability at the less generous tax rates applicable to individual filing as opposed to marital joint filing.

The judgment of the trial court is in all respects affirmed, and the case remanded for such further proceedings as may be necessary.

Costs are assessed to the appellant.

_____
WILLIAM B. CAIN, JUDGE