IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2021 Session

## FREDERICK JONES ET AL. v. REDA HOMEBUILDERS, INC.

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVCD16-8    Laurence M. McMillan, Jr., Chancellor**

———————————————————

**No. M2020-00597-COA-R3-CV**

———————————————————

Appellants purchased a home from Appellee home builder and later discovered numerous defects in the construction of the home. Appellants sued Appellee for breach of contract, breach of warranty, and negligence, and the trial court entered judgment in favor of Appellants. Appellants appeal the trial court's denial of their motion for attorney's fees under the provisions of the parties' contract. Appellee appeals the trial court's award of damages as speculative. We affirm the trial court's award of damages in favor of Appellants and reverse the trial court's denial of Appellants' motion for attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Jean Dyer Harrison, Nashville, Tennessee, for the appellants, Frederick Jones, and Kimberly Jones.

Sheri S. Philips, Clarksville, Tennessee, for the appellee, Reda Home Builders, Inc.

## OPINION

### I. Background

On or about April 21, 2014, Appellants Frederick and Kimberly Jones and Appellee Reda Homebuilders, Inc. ("Reda") entered into a "New Construction Purchase and Sale Agreement" (the "Contract") for the purchase of a home at 1621 Wonderboy Court (the "Home"). At closing, Reda provided Appellants with a one-year builder's warranty, i.e.,

the "Warranty of Completion of Construction," and all of Appellants' claims occurred within this one-year period. The Home is a two-story structure constructed over a basement, which is covered with brick veneer and some stone veneer. At the time the Contract was entered, the Home was under construction, and Appellants took numerous photographs of the construction progress before moving into the home in July 2014. Some of these photographs were entered into evidence.

Within 60 days of moving into the Home, Appellants noticed water intruding into the basement of the Home. Although Reda performed repairs, the water problems were not abated and recurred in April 2015. In a second attempt to address the problem, Reda removed the concrete garage floor, exposed the foundation, and discovered that the foundation under the garage, which forms a portion of the basement walls, had not been waterproofed. Reda also dug up the exterior foundation downhill from the garage and applied damp-proofing material. The water issues recurred in May 2015, and Appellants hired a structural engineer to assess the problem. The parties ultimately agreed that there were numerous defects in the construction of the Home.

On March 31, 2016, Appellants filed suit against Reda for breach of contract, breach of warranty, and negligence, alleging that Reda constructed the Home in an unworkmanlike manner. On May 13, 2016, Reda filed an answer. On June 12, 2017, Reda made an offer of judgment to purchase the Home back from Appellants for the initial purchase price of $399,000.00. Appellants declined the offer. After a failed attempt at mediation in April 2019, the case proceeded to trial on September 17, 2019.

On December 19, 2019, the trial court entered its memorandum and order, wherein it granted Appellants judgment in the amount of $125,343.00 on their breach of contract and negligence claims. On January 15, 2020, Appellants filed a motion for attorney's fees of $50,380.00 and discretionary costs of $4,602.25 under paragraph 25 of the Contract, which addresses defaults. By order of March 17, 2020, the trial court awarded Appellants' $4,602.25 in discretionary costs and denied their motion for attorney's fees.

## II. Issues

Appellants raise two issues for review:

1. Whether the Chancery Court erred in not awarding [Appellants'] attorneys' fees.
2. Whether the Appellants are entitled to an award of attorneys' fees incurred on appeal.

In the posture of Appellee, Reda raises the additional issue of: Whether the trial court erred in awarding a judgment to Appellants given that their damages were speculative.

## III. Standard of Review

When reviewing a trial court's findings following a bench trial, this Court reviews the record *de novo* and presumes that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 422 (Tenn. Ct. App. 2016) (citing *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)). However, we review a trial court's legal conclusions without a presumption of correctness. *Id.*

## IV. Damages

We begin with Appellee's issue concerning whether the trial court erred in awarding Appellants damages. The crux of Reda's argument is that the amount of damages was speculative and, thus, not recoverable. The party seeking damages assumes the burden of proof as to those damages. *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 57 (Tenn. Ct. App. 2004); *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). Damages cannot be based on mere conjecture or speculation. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). Uncertain, contingent, or speculative damages are unrecoverable. *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (quoting *Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville & Davidson* **Cnty**, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975)). An award for damages requires proof of damages within a reasonable degree of certainty. *Western Sizzlin*, 741 S.W.2d at 336 (citation omitted). "This 'reasonable certainty' standard applies to evidence regarding the existence of damages," not the "amount of damages." *Tennison Brothers v. Thomas*, No. W2016-00795-COA-R3-CV, 2017 WL 6403888, at *17-18 (Tenn. Ct. App. Dec. 15, 2017) (citing *Waggoner*, 159 S.W.3d at 58).

Turning to the trial court's December 19, 2019 order, although the trial court concedes that, "The damage calculation is the difficulty in this case," it acknowledges that, "The parties are in agreement that the home is defective in many respects." This finding is undisputed. As such, Appellees concede that Appellants suffered damages in this case because the Home was defective. Only the amount of damages is disputed; as the trial court stated, "[T]here is disagreement between the parties on the extent of the defects and the costs required to remedy the problems. [Appellants] claim that they are entitled to judgment in the amount of $253,810.00. [Appellee] is of the opinion that the court should award a judgment against it in the amount of $41,000.00." "Speculative damages . . . are only prohibited when the existence of damages is uncertain, not when the amount of damage is uncertain." *Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1990) (citing *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). Here, the existence of damages is not uncertain. In its order, the trial court enumerated the numerous building defects, on which the parties agreed:

13. The parties agree that the [H]ome was not properly framed and that an LVL beam needs to be installed in the kitchen as well as other additional framing below the kitchen floor for the floors to be leveled, and the loads in the home to be properly distributed. There was further agreement that the kitchen cabinets, countertops and appliances will need to be removed and reinstalled to accomplish these repairs.

14. The parties agree that the brick on the rear of the house is resting on and being supported by the wooden deck and that this condition must be repaired.

15. The parties are in agreement that the [H]ome's foundation is not properly supporting the [H]ome and that cracks in the brick veneer are occurring. This condition is getting worse over time. [Appellee's] expert testified that steel piers would need to be installed under the right rear of the [H]ome to remedy this situation. [Appellants'] contractor testified that steel piers may also be necessary under the chimney on the rear of the home.

16. The parties are in agreement that the foundation under the right rear side of the [H]ome needs to be re-excavated and proper waterproofing applied. There is further agreement that the grade on the right side and rear of the house needs to be lowered to ensure that the finished grade is below the floors in the basement. [Appellee's] expert testified that the side grade could be lowered, or a gravity wall installed/built to "push" water away from the foundation.

17. Another area of agreement between the experts is the necessity for a functional, physical footer drain and that the existing gravel only drain is unsatisfactory.

18. The experts also agree that the cracks in the brick veneer need to be repaired. [Appellants'] expert calls for the removal and replacement of the brick. [Appellee's] expert calls for the cracks to be repaired in connection with stabilizing the foundation and the installation of a brick lintel where the back deck is supporting the brick. The court is of the opinion that removing the brick on the rear of the [H]ome is unnecessary, and that the cracks can be repaired as suggested by [Appellee's] expert.

The trial court went on to note areas of disagreement between the parties:

19. There are several areas of disagreement between the parties. One of these areas involves the foundation under the bay window. As numerous photographs show, the bay window was built in an area that had no foundation for it. The actual foundation was six to ten feet to the left of the window. [Appellants] want to be compensated for this. However, as other photographs show, [Appellee] poured a monolithic concrete slab in the entire bay window thereby curing the problem. As [Appellee's] expert explained, it was an "unconventional fix, but it works." The court is of the opinion that

the [Appellants] have failed to carry their burden of proof that this defect needs further repair.

20. Another area of disagreement is the waterproofing of the basement under the front porch. [Appellants] claim there is none, as was the case under the garage that was excavated. [Appellee] claims that it was waterproofed, but offered no testimony or other proof to show that it was done. The court is of the opinion that the testimony of [Appellants] together with other circumstantial evidence in this case supports the conclusion that the basement foundation wall under the porch must be waterproofed. This repair will require shoring up the porch roof, removal of the front porch and landscaping to accomplish this repair.

Neither party disputes the foregoing findings concerning the defects that the parties agreed on and those they did not. Nonetheless, we have reviewed the testimony of the parties' respective experts, and we conclude that the evidence does not preponderate against the trial court's findings concerning the building defects. As such, Appellants are entitled to damages for the foregoing defects. In other words, the existence of damages in this case is certain, and Appellants were entitled to damages in this case.

As to the amount of damages, "[w]hen there is substantial evidence in the record and reasonable inferences may be drawn from the evidence[,] mathematical certainty [as to the amount of damages] is not required." *Cummins*, 667 S.W.2d at 765. In breach of contract cases, such as this, the purpose of assessing damages is to place the plaintiff in the same position as he or she would have been in had the contract been properly performed. *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772 (Tenn. Ct. App. 1990). Damages for breach of contract may be awarded even where it is impossible to prove the exact amount of damages. *Moore Constr. Co., Inc. v. Clarksville Dept. of Electricity*, 707 S.W. 2d 1 (Tenn. Ct. App. 1985). All that is required is proof with a reasonable degree of certainty. *Id.* at 15. Uncertain or speculative damages are prohibited only when the existence of damages is uncertain, not when the amount of damages is uncertain. *See Redbud Coop. v. Clayton*, 700 S.W.2d 551 (Tenn. Ct. App. 1985). In its December 19, 2019 order, the trial court arrived at its award of damages as follows:

22. Regarding the framing defects identified in paragraph 13, *supra*, [Appellants'] expert claims that these repairs will cost $18,000.00. It is unclear whether 30% OH&P [i.e., overhead and profit,] is included in this figure. [Appellee's] expert testified that these repairs should cost $22,000.00. . . . [Appellee's] expert was not questioned on whether OH&P was included in this figure. The court is of the opinion that 15% OH&P should be added to [Appellee's] expert's opinion for a total of $23,300.00 to make the framing repairs.

Turning to the record, as noted by the trial court, Appellee's expert testified, in relevant part, that

> [a]n LVL beam needed to be installed in the kitchen area of the home. Placing the LVL beam, inclusive of demolition of the kitchen would cost $4,000.00, plus $1,000.00 to repair the sag in the floor resulting from the LVL beam . . . . Further, he recommended a load bearing beam underneath the kitchen which would cost $2,000.00 to $3,000.00 . . . . Additionally, repairing the holes would cost $3,000.00 each for a total of $6,000.00 . . . . Further, to repair all four holes would cost between $5,000.00 and $8,000.00 . . . .

From our review of the record, the evidence does not preponderate against the trial court's findings regarding the range of costs for the necessary repairs due to framing defects. As such, we affirm the award of $23,300.00 for such repairs.

Concerning the other agreed upon building defects, the trial court awarded damages for those defects as follows:

> 23. Regarding the brick/deck defect identified in paragraph 14, *supra*, and as previously noted by this court in paragraph 18, *supra*, [Appellants'] expert calls for the removal of all brick on the rear of the [H]ome, while [Appellee's] expert calls for the installation of a lintel and tuck-pointing the cracks. The court is of the opinion that the brick on the rear of the [H]ome does not need to be removed, and that this defect can be repaired in the method suggested by [Appellee's] expert. The cost of the repair, according to [Appellee's] expert, is $5,000.00. Adding 15% OH&P to this figure will allow $5,750.00 to remedy this defect.
> 24. Regarding the foundation defect(s) identified in paragraph 15, *supra*, the experts agree that steel piers need to be installed under the right rear of the house to remedy this defect. [Appellee's] expert testified that this repair should cost $9,000.00. Adding 15% OH&P to this figure will allow $10,350.00 to repair this defect. (Masonry repair is added into the damage calculation in paragraph 27, *infra*).
> 25. Regarding the waterproofing defect(s) identified in paragraph 16, *supra*, [Appellee's] expert testified that this repair should cost $5,000.00. Adding OH&P to this figure will allow $5,750.00 to repair this defect.

In reaching the amount of damages for brick/deck defects, foundation defects, and waterproofing defects, the trial court relied solely on the evidence of Reda's own expert. Furthermore, in contesting the award of damages, Reda does not specifically address the trial court's addition of OH&P expenses to the repair amounts stated by their expert. As

such, we conclude that the evidence does not preponderate against the trial court's award of $21,850.00 for the foregoing repairs.

Finally, the trial court addressed incidental and ancillary repair costs:

26. Regarding the lack of footer drain defect identified in paragraph 17, *supra*, [Appellants'] contractor includes in his estimate $18,450.00 for excavation and waterproofing; $10,920.00 for landscaping; $1,400.00 for foundation drain; and, $2,050.00 for gravel. Several of these costs are associated with repair of other defects, but must be incurred to install a proper physical footer drain. Because the court allowed $5,000.00 in paragraph 25 above to excavate and waterproof the right rear of the [H]ome, the court is of the opinion that this amount for excavation included in [Appellant's] request should be reduced by this amount ($18,450.00 - $5,000.00 = $13,450). Therefore, adding 15% OH&P for excavation and waterproofing; landscaping; foundation drain; and, gravel, the sum of $31,993.00 will be allowed to repair this defect(s), and other, *infra*.

27. Regarding the waterproofing defect identified in paragraph 20, *supra*, and the court's opinion that this defect needs repairs, the court is of the opinion that the costs of repair included in paragraph 26, *supra*, includes costs necessary to make this repair. However, there appears to be no proof in the record on the cost necessary to replace the front porch following the installation of the footer drain and waterproofing. There is a subcontractor bid, *See* Trial Exhibit 59, which includes some costs associated with the demolition of the front porch, but not replacement. [Appellants'] contractor did have the sum of $36,800.00 for masonry, but this court has held that the bricks on the rear of the house do not need to be removed and replaced, but the cracks in the brick need repair.

As noted above, this court is not precluded from awarding a sum to compensate a homeowner for a defect that is certain . . . . Therefore, the court will award an additional $15,000.00, inclusive of OH&P, for the removal and replacement of the front porch as well as for masonry repair to remedy the cracks in the brick caused by settlement of the foundation.

28. [Appellants] have requested other items of damages, some of which should be awarded, and some of which should not. The court finds that [Appellants] have failed to carry their burden of proof on the following items of damages: fish tank removal; moving; monthly storage and unpacking; HVAC; polyurethane injection; downspouts; and, framing not awarded elsewhere in this opinion.

29. The court is of the opinion that there will be some electrical work and interior finish work required to repair the home properly. Trial Exhibit 59 is a subcontractor bid for $52,027.87 for various work, some of which has been awarded elsewhere in this opinion, to include front porch repairs; framing

repairs; and kitchen repairs. Some of the items included in Exhibit 59 are for items the court declines to award, to include deck repair and removal and replacement of tile in the basement. However, many of the costs contained in Exhibit 59 will be necessary to compensate [Appellants], to include removal and replacement of drywall in basement; drywall repair; baseboard and ¼ round in basement; painting; floor repair and reset carpet. The court is of the opinion that 60% of the amount requested in Exhibit 59, inclusive of OH&P, ($31,200.00) is an amount that will compensate [Appellants] for the additional items identified in this paragraph.

Based on the foregoing, the trial court awarded a total judgment in the amount of $125,343.00. From our review of the record, including the testimony of the experts and the trial exhibits, we conclude that the trial court's reasoning is sound and its award of damages in the amount of $125,343.00 is within the range of reasonableness given the extent of the building defects, the known costs of necessary repairs, and the likely incidental and ancillary costs that will arise as those repairs are made. As discussed above, damages are certain in this case as Appellee concedes numerous defects in its construction of the Home. Although the amount of damages is not certain, there is sufficient evidence to support the trial court's reasoning and ultimate entry of judgment in the amount of $125,343.00. As such, we affirm the trial court's award of damages in the amount of $125,343.00.

### V. Attorney's Fees

The parties' contract provides, in relevant part:

25. Default. Should Buyer default hereunder, the Earnest Money shall be forfeited as damages to Seller and shall be applied as a credit against Seller's damages. Seller may elect to sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. Should Seller default, Buyer's Earnest Money shall be refunded to Buyer. In addition, Buyer may elect to sue, in contract or tort, for damages or specific performance of this Agreement, or both. In the event that any party hereto shall file suit for breach or enforcement of this Agreement (Including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). "When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written." *Id.*

(quoting *Union Realty Co., Ltd. v. Family Dollar Stores of Tenn., Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007)). "In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its 'plain, ordinary, and popular sense.'" *Id.* (quoting *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008)). Here, the parties' use of the term "shall," i.e., "the prevailing party **shall** be entitled to recover all costs of such enforcement, including reasonable attorney's fees," indicates that the award of attorney's fees to the prevailing party is mandatory. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) ("'When "shall" is used . . . it is ordinarily construed as being mandatory and not discretionary.'") (quoting *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009)). Accordingly, Appellants are entitled to an award of attorney's fees if they are the prevailing party.

Tennessee courts have defined a "prevailing party" as one who "succeeds on a 'significant claim' which affords the [party] a substantial measure of the relief sought." *Daron v. Dep't of Corr.*, 44 S.W.3d 478, 481 (Tenn. 2001). Additionally, a "prevailing party" has been defined as a party "who has succeeded 'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010) (internal citations omitted). Although Appellants did not receive the full amount of damages they initially sought, i.e., $253,810.00, they received a significant award of $125,343.00. Furthermore, as discussed above, Appellee conceded that there were numerous building defects in the Home. This fact clearly evinces that Reda, by its own admission, breached the contract and the warranty. Nonetheless, the trial court denied Appellants' "motion for attorney's fees on the grounds that the court's judgment was for both breach of contract and negligence and attorney's fees are not supported by the facts as found, and the causes of action alleged." We disagree. Under the plain language of the parties' contract, as the prevailing party in the lawsuit, Appellants are entitled to their reasonable attorney's fees and costs. As such, we reverse the trial court's denial of attorney's fees and remand for determination of Appellant's reasonable attorney's fees and costs, including those fees and costs accrued in this appeal, and for entry of judgment on same. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (holding that "former wife was prevailing party at trial and appellate levels, and thus was entitled to attorney's fees award under mandatory fee provision in parties' marital dissolution agreement.").

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's orders awarding Appellants damages in the amount of $125,343.00 and discretionary costs in the amount of $4,602.25. We reverse the trial court's order denying Appellant's motion for attorney's fees. The case is remanded for determination of Appellants' reasonable attorney's fees, costs, and expenses incurred in the litigation, including on appeal, for entry of judgment on same, and for such other proceedings as may be necessary and are consistent with this opinion. Costs

of the appeal are assessed to Appellee, Reda Home Builders, Inc., for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE