IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 17, 2006 Session

## BANCORPSOUTH BANK, INC. v. BILLY J. HATCHEL

**Direct Appeal from the Chancery Court for Weakley County**
**No. 18967      William M. Maloan, Chancellor**

————————————

**No. W2005-01848-COA-R3-CV - Filed June 29, 2006**

————————————

In this appeal, we are asked to review the trial court's decision regarding the damages incurred by the plaintiff in a breach of contract action. The plaintiff, a bank, attempted to sell a parcel of distressed real estate containing residential dwelling units at a foreclosure sale. The defendant placed the highest bid for the property, but he subsequently refused to consummate the transaction. After the sale, a dispute arose over who would be responsible for certain repairs, and the defendant, who did not inspect the property prior to placing a bid, apparently felt that the property was not worth the amount he bid for it. The bank brought suit for breach of contract, but it failed to present any evidence of the property's fair market value on the date of breach. After a bench trial in the matter, but before the trial court entered its final judgment, the bank sought to introduce additional evidence in the form of a second foreclosure sale conducted post-trial. The bank asserted that the amount it received at the second foreclosure sale represented the fair market value of the property. After considering this additional evidence, the trial court entered a judgment finding that the bank failed to present evidence of the property's fair market value on the date of the breach. Accordingly, the trial court concluded that the bank was not entitled to the damages it sought as a result of the breach. The bank appealed that decision to this Court. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

J. Brandon McWherter, Lewis L.Cobb, Jackson, TN, for Appellant

James H. Bradberry, Dresden, TN, for Appellee

**OPINION**

**I.**

**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Jerry Spore, acting as substitute trustee on behalf of BancorpSouth Bank, Inc. ("Bank" or, collectively with Spore, the "Appellants"), scheduled a foreclosure sale of certain distressed real property to be held on December 16, 2004 at the courthouse in Weakley County, Tennessee. Several multi-family residential units are situated on the property, and the property was to be auctioned on an "as is" basis without any warranties.

On the day of and prior to the foreclosure sale, Billy J. Hatchel ("Hatchel" or "Appellee") met with the Bank's regional vice president to discuss the property. The vice president informed Hatchel that the Bank hoped to receive at least $600,000 for the property. According to Hatchel, the vice president agreed that the Bank would pay the taxes, filing fees, and any other incidental expenses associated with the sale if Hatchel would agree to bid $575,000 for the property. Hatchel also stated that he and the vice president agreed that, if Hatchel succeeded in his bid for the property, the Bank (1) agreed to allow him to keep all rents generated from the property; (2) would finance his purchase of the property at an initial interest rate of 5.25% with no payments for the first two months and payments representing interest only for the first year; (3) agreed to make all necessary repairs to the property; and (4) would extend Hatchel a line of credit in the amount of $250,000 that he could use as he pleased.

During the foreclosure sale, the vice president placed a bid for the property in the amount of $570,000 on behalf of the Bank. Hatchel then placed his bid in the amount of $575,000, and the trustee declared Hatchel to be the successful bidder. Immediately thereafter, the trustee obtained Hatchel's signature on a document entitled "Confirmation of Bid and Agreement." Within a few days after the sale, the trustee and representatives of the Bank contacted Hatchel for the purpose of consummating the transfer of the property. Hatchel indicated that he would not sign any documents until he had the opportunity to inspect the property, which he had not done prior to the sale.

At some point, Hatchel secured the services of a contractor to inspect the property and present him with an estimate of the cost needed to repair the property. The trustee ultimately sent a letter to Hatchel's attorney and informed the attorney that he would appear at his office on January 10, 2005 at 10:00 a.m. to present a Substitute Trustee's Deed conveying the real property to Hatchel. On that date, the trustee appeared at the offices of Hatchel's attorney, but Hatchel was not present. Thereafter, Hatchel refused to follow through with the transaction, apparently because he felt that the amount he bid for the property did not reflect its actual value in light of the damage to the dwellings and that the Bank should be responsible for the necessary repairs.

In light of Hatchel's refusal to consummate the transaction, the Appellants filed suit against Hatchel in the Chancery Court of Weakley County seeking specific performance of the bid agreement, which the Appellants asserted to be the contract between the parties. In the alternative,

the Appellants sought damages, including attorney's fees, for breach of contract. Hatchel filed an answer denying liability and a counter-complaint alleging that, should the Appellants succeed in their action for specific performance, he was entitled to $5,000 in damages representing the amounts he spent improving the property following the foreclosure sale.

The chancery court held a bench trial in the matter on May 23, 2005, at the conclusion of which the court denied the Appellants' claim for specific performance, held that Hatchel breached the parties' contract, dismissed Hatchel's counter-complaint for damages, and reserved its ruling on the amount of damages recoverable by the Appellants. In commenting on its decision to reserve ruling on the amount of damages, the trial court stated that the measure of damages would be the difference between the contract price and the fair market value of the property at the time of breach, but the court noted the scant proof regarding the fair market value of the property. Thereafter, the Appellants filed a motion seeking to reopen the case for the presentation of additional proof. Therein, they informed the court that the trustee conducted a second foreclosure sale on May 27, 2005, and they asked the court to consider the fact that the Bank successfully bid $400,000 for the property at this latest sale when calculating the fair market value of the property.

On July 15, 2005, the trial court entered a final judgment in the case, holding as follows:

> The proper measure of damages when the buyer fails to perform a contract to purchase real estate is "the difference between the contract price and the fair market value of the property at the time of the breach." *Turner v. Benson*, 672 S.W.2d 752, 754 (Tenn. 1984). The fair market value of real estate is "the price a reasonable buyer would pay if he were willing to buy but did not have to and that a willing seller would accept if he were willing to sell but did not have to." *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1970).
>
> There was no proof introduced at trial as to the fair market value of the subject property at the time of the breach. Numerous witnesses, including Hatchel, testified as to the fair market value at the time of trial, but not the time of the breach. Post trial, the Bank submits that the court should consider the subsequent foreclosure sale of May 27, 2005 when the subject property was purchased by the Bank for $400,000. The facts contained in the supporting affidavit disclose one bidder of $215,000 and the Bank's ultimate bid of $400,000. The court finds this sale does not establish the fair market value of the subject property as established by *Nashville Housing Authority v. Cohen*, especially in light of the fact the Bank bid $570,000 for the same property at the first foreclosure sale on December 16, 2004.
>
> Therefore, the Court finds there is nothing in this record to establish the fair market value of the subject property at the time of

the breach. The Bank, however, is entitled to special damages which arise out of Hatchel's breach of contract. The Bank's application for attorney's fees and discretionary costs in the amount of $13,062.25 is approved and judgment for that amount, plus the costs of this cause is entered against the defendant Hatchel.

The Bank timely filed an appeal of the trial court's ruling in this case to this Court.

## II.
### ISSUES PRESENTED

The Bank presents the following issues for our review:

1. Whether the trial court erred when it found that the Bank failed to prove that it sustained any damages as a result of the Hatchel's breach of the parties' contract; and
2. If the Bank is successful on appeal, whether it is entitled to an award of its attorney's fees incurred on appeal pursuant to the terms of the parties' contract.

Fore the reasons set forth more fully herein, we affirm the decision of the trial court and decline the Bank's request for attorney's fees.

## III.
### DISCUSSION

When a plaintiff alleges breach of contract, he or she is responsible for proving "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 Tenn. App. LEXIS 89, at *8 (Tenn. Ct. App. Feb. 6, 1998) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996)). On appeal, Hatchel does not contest that an enforceable contract existed between the parties or the trial court's conclusion that he breached that contract. Instead, our analysis is confined to the narrow issue of the damages flowing from that breach.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990) (citing *Action Ads Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979); *Estate of Jessee v. White*, 633 S.W.2d 767, 769 (Tenn. Ct. App. 1982)). The injured party is not entitled to profit from the defendant's breach. *Hennessee v. Wood Group Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). As we are called upon to evaluate a trial court's ruling regarding the damages component of a breach of contract action, we adhere to the following:

-4-

Determinations concerning the amount of damages are factually driven. Thus, the amount of damages to be awarded in a particular case is essentially a fact question. However, the choice of the proper measure of damages is a question of law to be decided by the court.

*Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998) (citations omitted). In non-jury cases, we review a trial court's findings of fact de novo upon the record presuming those findings to be correct unless the preponderance of the evidence is otherwise. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing TENN. R. APP. P. 13(d)). We review questions of law de novo without affording a presumption of correctness to the trial court's legal conclusions. *Adams v. Dean Roofing Co., Inc.*, 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986).

The trial court held that the proper measure of damages applicable to the breach of a contract for the sale of real estate is as follows: "[T]he general rule and proper measure of damages available to a vendor as against a breaching vendee in a real estate transaction is that the vendor is entitled to the difference between the contract price and the fair market value of the property at the time of the breach." *Turner v. Benson*, 672 S.W.2d 752, 754 (Tenn. 1984)[1]; *see also Massey v. Hardcastle*, 753 S.W.2d 127, 140 (Tenn. Ct. App. 1988); *Lane v. Associated Hous. Developers*, 767 S.W.2d 640, 644 (Tenn. Ct. App. 1988); *Yarbrough v. Stiles*, 717 S.W.2d 886, 889 (Tenn. Ct. App. 1986). The parties do not dispute that this is the correct measure of damages to be applied in this case, and we find no error with the trial court's legal conclusion.

The parties also do not dispute that the contract price in this case is $575,000, or the amount that Hatchel bid for the property. A dispute arises, however, over the trial court's factual conclusions regarding the fair market value of the property at the time of the breach. First, the trial court held that it could not determine the fair market value of the property at the time of the breach due to the insufficiency of the evidence presented at trial. Next, the court held that the Appellants could not establish the fair market value of the property by relying on the amount received at a subsequent sale conducted by the Appellants post-trial. The Bank takes issue with both findings on appeal by arguing that it established, both at trial and through the amount received at the subsequent sale, that $400,000 represented the fair market value of the property at the time of the breach. Accordingly, the Bank contends that it is entitled to damages in the amount of $175,000, which represents the difference between the contract price of $575,000 and the fair market value of $400,000. On appeal, the appellant has the burden of demonstrating that the evidence presented at trial actually preponderates against the trial court's findings of fact. *Dunlop Tire & Rubber Corp. v. Serv. Merch. Co., Inc.*, 667 S.W.2d 754, 758 (Tenn. Ct. App. 1983) (citing *Capital City Bank v. Baker*, 442 S.W.2d 259, 266 (Tenn. Ct. App. 1969)).

---

[1] The supreme court also stated that "the vendor may recover special damages, if any, that arise out of the breach of contract in order to compensate the vendor for any loss or injury actually sustained by reason of the vendee's breach." *Turner*, 672 S.W.2d at 754. The trial court awarded the Appellants an amount representing their special damages in this case, and the trial court's decision in this regard is not at issue on appeal.

"The fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell." *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976) (citing *Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 301 S.W.2d 905, 907 (Tenn. 1957)). The date of the breach generally is held to be the closing date of the transaction.[2] *Myer v. Whitacre*, No. 01-A-01-9701-CH-00014, 1997 Tenn. App. LEXIS 464, at *2 (Tenn. Ct. App. July 2, 1997) (no petition for cert. filed).

We begin by examining the trial court's conclusion that no proof was presented at trial that would tend to prove the fair market value of the property at the time of the breach of the parties' contract. The Bank argues that this conclusion is in error because the record demonstrates that sufficient evidence was presented at trial to prove that $400,000 represented the fair market value of the property on the date of the breach. In support of this assertion, the Bank points to Hatchel's testimony to the effect that he believed the fair market value of the property to be $400,000. Further, the Bank points to the testimony of an auctioneer called by Hatchel who stated that he too would value the property at $400,000. The record establishes that both Hatchel and the auctioneer have extensive experience in the real estate business. The Bank's vice president testified concerning a valuation previously conducted by the Bank, which valued the property at $600,000. The Bank, however, never introduced the valuation as an exhibit at trial, and the vice president never elaborated on the veracity or timing of the valuation. The Bank acknowledges that this testimony constitutes the extent of proof proffered at trial in regards to the fair market value of the property, and it urges this Court to reject the testimony of its vice president and adopt that of Hatchel.

"Without proof of damages, there can be no award of damages." *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). "The party seeking damages has the burden of proving them." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (citing *Inman*, 634 S.W.2d at 272). Courts are not permitted to award damages based on mere conjecture or speculation. *Id.* "However, uncertain and speculative damages are prohibited only when the existence of damages is uncertain not when the amount of the damage is uncertain," *Moore Constr. Co., Inc. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985) (citing *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)); *see also Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989), or when the evidence presented by the plaintiff is insufficient to enable the trier of fact "to make a fair and reasonable assessment of damages," *Wilson v. Farmers Chem. Ass'n, Inc.*, 444 S.W.2d 185, 189 (Tenn. Ct. App. 1969).

Damages for breach of contract are permissible even when the plaintiff is unable to prove the exact amount of those damages. *See Provident Life & Accident Ins. Co. v. Globe Indemnity Co.*, 3 S.W.2d 1057, 1058 (Tenn. 1928). "The law does not require exactness of computation in suits that

---

[2] The agreement signed by Hatchel after the first foreclosure sale contained a section for setting forth the date on which Hatchel would be required to tender payment following the sale. This provision, however, was marked through and the word "Waived" written beside it. The trial court made no finding regarding the closing date of the transaction at issue, and the parties do not assert one on appeal. Thus, it appears that the closing date in this case was January 10, 2005, the date the trustee appeared at the offices of Hatchel's attorney to tender the deed to the property.

involve questions of damages growing out of contract or tort." *St. John v. Bratton*, 150 S.W.2d 727, 729 (Tenn. Ct. App. 1941). While the amount of damages to be awarded in a given case is not controlled by fixed rules of law or mathematical formulas, *Overstreet*, 4 S.W.3d at 703, the evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages, *Wilson*, 444 S.W.2d at 189. "All that an award for damages requires is proof of damages within a reasonable degree of certainty." *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985) (citing *Wilson*, 444 S.W.2d at 189; *Acuff v. Vinsant*, 443 S.W.2d 669, 674 (Tenn. Ct. App. 1969)).

Despite the fact that the Bank had the burden of proving its damages, it presented no proof at trial that would enable the trial court to establish those damages with a reasonable degree of certainty. The Bank readily concedes as much on appeal by arguing that this Court should disregard the testimony of its vice president concerning the Bank's previous valuation of the property. As the Bank admits in its brief, it presented no evidence tending to prove the method used in conducting the valuation, the purpose for the valuation, or the timing of the valuation. Instead, the Bank asks this Court to accept the proof offered by Hatchel to the effect that $400,000 represented the fair market value of the property on the date of the breach. The trial court, however, discounted this testimony because it went to prove the fair market value of the property at the time of trial, not the fair market value at the time of the breach.

The record supports the trial court's conclusion. Contrary to the argument espoused by the Bank on appeal, Hatchel did not testify to the fair market value of the property *on the date he breached the contract*. Instead, he testified as to the fair market value on the date of trial, stating:

> Q.    What do you think [the property is] worth *now*?
>
> . . . .
>
> A.    If I told you my honest what I thought the fair market value in
>        Dresden, Tennessee *today*, would be $400,000.

(emphasis added). While the auctioneer called by Hatchel did testify that he previously stated in a deposition that $400,000 represented the fair market value of the property, no mention is made of when he assigned this value to the property. Such evidence does not enable the trier of fact to calculate the Bank's damages with a reasonable degree of certainty. Accordingly, we cannot say that the evidence produced at trial preponderates against the trial court's holding in this regard.

Next, the Bank takes issue with the trial court's conclusion that the $400,000 it received at the foreclosure sale conducted post-trial on May 27, 2005 did not represent the fair market value of the property on the date of the breach. In reaching this conclusion, the trial court noted that the Bank initially bid $570,000 for the property at the first foreclosure sale held on December 16, 2004. Other than this fact, the trial court did not elaborate on the reasons it found the amount received at the post-trial foreclosure sale to be inadequate. The Bank argues that the trial court erred by failing to find

that the $400,000 received at the post-trial foreclosure sale represented the fair market value of the property on the date of the breach.

Our independent research has revealed that, when evaluating cases involving an alleged breach of a real estate contract, this Court has recognized that the amount a seller is eventually able to obtain for the property may constitute evidence of its fair market value at the time of the breach. *See Myer v. Whitacre*, No. 01-A-01-9701-CH-00014, 1997 Tenn. App. LEXIS 464, at *4 (Tenn. Ct. App. July 2, 1997) ("We think that what the property finally sold for is some evidence of its value at the time of the breach."); *Simpson v. Golden Serv. Realty & Auction, Inc.*, No. 02A01-9509-CH-00203, 1996 Tenn. App. LEXIS 841, at *12 (Tenn. Ct. App. Dec. 23, 1996) ("[W]e find that the eventual selling price . . . represented the fair market value of the property."); *Green v. Webb*, 1985 Tenn. App. LEXIS 3125, at *2–4 (Tenn. Ct. App. Aug. 29, 1985) ("The prevalent view among American jurisdictions is the resale price of property is merely treated as some evidence of the market value of the lane . . . ."); *Springfield Tobacco Redryers Corp. v. City of Springfield*, 293 S.W.2d 189, 200 (Tenn. Ct. App. 1956) ("Upon defendant's breach of its contract complainant was entitled to recover the difference between the promised price and the value of the land, which value, we think, was established, as between complainant and defendant, by the subsequent sale."). "This rule is conditioned upon the second sale being made on the same or equally favorable terms as the initial sale, the price obtained from the resale be the highest price obtainable for the property and the resale be accomplished within a 'reasonable time' after the vendee's breach." *Green*, 1985 Tenn. App. LEXIS 3125, at *3. Further, the amount received at a subsequent sale can be considered indicative of the fair market value of the property on the date of the breach, especially when the subsequent sale is conducted in an arms-length fashion. *Myer*, 1997 Tenn. App. LEXIS 464, at *4.

The Bank contends that the trial court erred when it rejected the price received at the post-trial foreclosure sale due to the amount of the Bank's previous bid at the original foreclosure sale. It appears as though the trial court implicitly ruled that, since the Bank previously bid $570,000 for the property at the December 16, 2004 foreclosure sale, the $400,000 received at the May 27, 2005 foreclosure sale did not reflect the fair market value of the property on the date of the breach of the parties' contract.

Some jurisdictions hold that evidence consisting of a previous offer to purchase the real property in question is inadmissible to establish its value on the date of the breach of the parties' contract. *See* Vitauts M. Gulbis, Annotation, *Unaccepted Offer for Purchase of Real Property as Evidence of its Value*, 25 A.L.R.4th 571 (1983); 31A C.J.S. *Evidence* § 230 (1996). In support of its argument, the Bank cites this Court to *Board of Mayor & Alderman, Town of Milan v. Thomas*, 178 S.W.2d 772 (Tenn. Ct. App. 1943). In that case, the Town of Milan brought suit to condemn a portion of land owned by the defendant. *Id.* at 773. In an effort to prove the value of his property, the defendant called a witness who, over the objection of the town, was allowed to testify regarding an offer he previously made to purchase the property. *Id.* at 775. Relying on our supreme court's decision in *Vaulx v. Tennessee Central Railroad Company*, 108 S.W. 1142, 1148 (Tenn. 1907), this Court concluded that the trial court's decision to allow the witness to testify concerning a prior offer

constituted error, as such evidence could not be used to establish the value of the land.[3] *Id.* Thus, Tennessee appears to join those jurisdictions holding that previous offers to purchase cannot be used to establish the value of the property on the date of the breach of a contract to sale real estate. Accordingly, the trial court erred when it reasoned that the amount received at the post-trial foreclosure sale did not represent the fair market value of the property on the date of the breach because it did not comport with the previous bid made by the bank at the original foreclosure sale.

Despite finding error in the trial court's reasoning, we cannot say that the trial court's decision to reject the amount received by the Bank at the post-trial foreclosure sale constitutes error altogether in this case. *See Duck v. Howell*, 729 S.W.2d 110, 113 (Tenn. Ct. App. 1987) ("Where a trial court rules correctly but upon an erroneous reason, the appellate court will sustain the ruling upon what it conceives to be the correct theory."). In order for the price received at a subsequent sale to represent the fair market value of the real property, the subsequent sale must be conducted under circumstances similar to those present at the initial sale and in an arms-length fashion. *See Myer*, 1997 Tenn. App. LEXIS 464, at *4; *Green*, 1985 Tenn. App. LEXIS 3125, at *2–3. As we previously noted in this opinion, "[t]he fair market value of the land is the price that a reasonable buyer would give if he were *willing to*, *but did not have to*, purchase and that a willing seller would take if he were *willing to*, *but did not have to*, sell." *Nashville Hous. Auth. v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976) (emphasis added).

We are cognizant of the fact that the contract giving rise to the present dispute also originated from a forced sale of the property at auction and that the second foreclosure sale occurred within a few months of the first sale. Thus, it initially would appear that the two sales are similar. At the first sale, however, the Bank clearly was motivated to achieve the highest possible price for the property. Further, the evidence in the record supports the inference that the bid placed by Hatchel at the first sale was somewhat influenced by certain incentives offered by the Bank should he place the highest bid. Thus, while the manner of conducting the sale was the same in both instances, there is a drastic change in the circumstances and motivations of the Bank between the first and second foreclosure sale. After Hatchel breached the parties' contract by refusing to consummate the transaction, the real property at issue was not sold on the open market but in a forced sale at auction. At the second foreclosure sale, the Bank, in essence, stood on both sides of the transaction acting as both buyer and seller. While it was entirely permissible for the Bank to do this, this environment is not conducive to enabling a fact finder to determine the fair market value of the property with a reasonable degree of certainty.

Our appellate courts previously have expressed the view that the price received for real property in a forced sale at auction might not be indicative of its actual fair market value on the date of breach. *See Turner v. Benson*, 672 S.W.2d 752, 755 (Tenn. 1984) ("In addition, considering the resale to have taken place only about one year after the breach, *and it being an arms-length transaction, rather than a forced sale at auction*, we think it reasonable to infer that the fair market

---

[3] The court went on to conclude, however, that this error was harmless and did not affect the result ultimately reached by the jury. *Bd. of Mayor & Alderman, Town of Milan*, 178 S.W.2d at 775.

value of plaintiffs' residence at the time of the breach was roughly equivalent to the contract price." (emphasis added)); *Tinkham v. Beasley*, No. M1999-02809-COA-R3-CV, 2000 Tenn. App. LEXIS 776, at *8 (Tenn. Ct. App. Nov. 22, 2000) ("The fact that the house sold for $155,000 in a forced sale at auction some four months later does not undermine the trial court's decision not to value the home at less than $167,000 because . . . one would expect that property sold at auction would bring a lower price."). Given the circumstances surrounding the post-trial foreclosure sale in this case, we hold that the trial court did not err when it decided to reject the price received by the Bank at the second foreclosure sale as it cannot be determined with a reasonable degree of certainty that this amount represented the fair market value of the property on the date of Hatchel's breach of the parties' contract.

## IV.
### CONCLUSION

Having determined that the Bank failed to carry its burden of proving its damages resulting from the breach of the parties' contract by failing to produce sufficient evidence of the fair market value of the property at trial, we must affirm the trial court's decision. *See Bright Hope United Methodist Church v. Small*, No. 03A01-9602-CH-00062, 1996 Tenn. App. LEXIS 474, at *11–12 (Tenn. Ct. App. Aug. 16, 1996); *Byrd v. Hartley*, No. 6, 1986 Tenn. App. LEXIS 3060, at *4 (Tenn. Ct. App. June 10, 1986). Moreover, since the Bank has been unsuccessful in this appeal, we decline its request for attorney's fees. Costs of this appeal are to be taxed to the Appellant, BancorpSouth Bank, Inc., and its surety, for which execution, if necessary, may issue.

_____
ALAN E. HIGHERS, JUDGE