IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 19, 2009 Session

## DREXEL CHEMICAL COMPANY, INC. v. GERALD MCDILL

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004539-06, Div. I     John R. McCaroll, Jr., Judge**

---

**No. W2008-01307-COA-R3-CV - Filed June 11, 2009**

---

This breach of contract action arises from the parties' employment agreement. Employer agreed to pay Employee $10,000.00 to relocate to the city where Employer's plant was located. Employee moved to the local area without his family and Employer paid him $10,000.00. After Employee terminated his employment, Employer sued to recover the $10,000.00 because it claims that Employee failed to satisfy the relocation requirement because he did not move his family with him to the local area. The trial court held that Employee satisfied the relocation requirement. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Taylor A. Cates, Memphis, Tennessee, for the appellant, Drexel Chemical Company, Inc.

Richard D. Underwood, Memphis, Tennessee, for the appellee, Gerald McDill.

**OPINION**

**Background/Procedural History**

In 2004, GroMoor, Inc. ("GroMoor")[1] entered into an oral employment agreement with Defendant Gerald McDill ("McDill") to work as the manager of their plant in Memphis, Tennessee.

---

[1]At trial, Drexel Chemical Company, Inc. ("Drexel") presented testimony that GroMoor and Drexel were owned by the same individual. GroMoor was eventually wound up. GroMoor's assets were purchased by Drexel and Drexel took over all of GroMoor's obligations. Thereafter, McDill was employed by Drexel. Drexel brings this suit asserting GroMoor's rights under the employment agreement. It does so pursuant to a specific asset purchase agreement that it allegedly made with GroMoor when the company was wound up. Although McDill continues to assert that GroMoor's rights under the contract were not assigned to Drexel, he does not raise this as an issue on appeal, and we, therefore, will not address it on this appeal. *See Childress v. Union Realty Co., Ltd.* 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).

Prior to his employment at GroMoor, McDill resided in Vicksburg, Mississippi where he operated a Sears franchise. As part of the employment agreement, GroMoor offered McDill a $100,000.00 salary, provided him with a small pickup truck, and paid $10,000.00 for moving expenses. Drexel now seeks to recover the $10,000.00 relocation allowance because it claims that McDill failed to comply with the relocation requirement.

Two weeks after accepting the employment offer, McDill began working at GroMoor's Memphis location. He stayed in a motel for a week or two, and then moved into an apartment in Hernando, Mississippi.[2] McDill worked for GroMoor from November 2004 until GroMoor went out of business on March 18, 2006. After Drexel acquired GroMoor, McDill worked for Drexel for about four months and then tendered his resignation. McDill testified that during this time he commuted to work from that apartment, that his wife stayed with him there at times, and he put their Vicksburg home up for sale. McDill also explained that his wife continued living in Vicksburg operating the couple's business there. McDill testified that he never changed his driver's license or voter registration to reflect his change of address. During McDill's employment he accumulated approximately 71,000 miles on the company vehicle that GroMoor provided to him. After he resigned at Drexel in July 2006, he moved back to Vicksburg, Mississippi to work at another chemical company.

There was no written document reflecting the terms of McDill's employment at GroMoor, so both parties testified about GroMoor's obligation to pay McDill $10,000.00 for moving expenses. Drexel presented the testimony of Robert Shockey ("Mr. Shockey"), who owned both GroMoor and Drexel. Mr. Shockey testified that when he made the employment offer he discussed McDill's employment terms with him. Mr. Shockey testified to the following:

A.      His employment was that he - - the job - - it was necessary for him to move to Memphis to run the job because he essentially was the plant manager. And he needed to be present, you know, around the clock pretty much or available around the clock.

         So it was necessary for him to move to Memphis to accept and take the job, and that was presented to him in that manner.

. . . .

Q.      What discussions did you have with him about moving expenses?

A.      I told him that we would - - you know, we gave him a salary. And I told him we would pay to move his family to Memphis, to physically move his family

---

[2]The Hernando, Mississippi area is within Memphis' metropolitan area. Drexel concedes that McDill could have satisfied the relocation requirement by moving to Hernando, Mississippi. Drexel claims that McDill failed to meet the relocation requirement because he failed to move his family with him to Hernando.

to Memphis, locate in Memphis. And we would give him a 10,000-dollar fee to move his family.

McDill, on the other hand, testified that the following took place at his meeting with Mr. Shockey:

A. That meeting occurred in Stanley Bernard's office, that portion of the meeting. We had met earlier in Mr. [Shockey's] office. Gray had been involved in some of those discussions in regard to some questions that I had asked.

But Mr. Shockey was called out. For some reason, I wound up - - Stanley Bernard and I went to his office and waited for him. And when he returned, we had a discussion. The discussion started off - - he said, do you understand what the offer is for - - you know, what the job pays.

I said, no. No one has told me what it pays. He said, I will give you $100,000; and I will also give you a small pick up [sic], and I will give you $10,000 to take care of moving expenses. You do that whenever, however you want to. I don't want to have anything to do with setting up moving or be involved in it whatsoever. I will just write you a check.

That was the extent of the offer. And I told him that I would get back with him and let him know if I accepted it or not.

Q. Was the - - was there any other qualification put on the moving allowance that you were given?

A. None that I'm aware of. There was nothing verbally stated to my knowledge other than I will give you the money to take care of moving expenses.

McDill further explained:

Q. Did Mr. Shockey make it clear to you, while you were employed at [GroMoor], that you would either have to pay those moving expenses back or actually move your wife and the rest of your household belongings to Memphis or the Memphis area?

A. I didn't have any of those discussions with him until I turned in my notice.

. . . .

Q. Did you have an understanding about whether that obligation ceased at the time that [GroMoor] was wound up?

A. I felt like I had fulfilled the obligation back in December when I moved.

Drexel also presented testimony about conversations that company representatives had with McDill regarding the moving allowance after McDill began working at GroMoor. GroMoor's operations manager, Gray Center ("Mr. Center"), testified that at some point, another employee gave notice that he was leaving GroMoor and there was a dispute regarding the moving expenses GroMoor had paid that employee. Subsequently, Mr. Center discussed moving expenses with McDill. McDill expressed concern that he was similarly situated to that employee. Mr. Center explained that he told Mr. McDill: "We understand that there is an issue, family related issue, which has kept you from moving your family up here to date. We understand that. We are attempting to accommodate that." Mr. Center further testified that when Mr. McDill asked if he was also obligated to repay moving expenses, he told him that if he left that day, he would be obligated to repay the moving expenses because he had not moved his family up to Memphis yet.

Nevertheless, in the sixteen months that McDill worked for GroMoor, the company never provided McDill with any written notification that he had failed to comply with its moving requirement. Mr. Center admitted at trial that he was not present when Mr. Shockey presented the terms of employment to McDill. Mr. Center also testified, as Drexel's representative at trial, that, to the best of his knowledge, McDill was at work when he was supposed to be and his job performance was satisfactory.

After hearing the evidence, the trial court entered judgment in favor of McDill. The trial court opined that GroMoor's purpose in having Mr. McDill move to the Memphis area was so that he was available around the clock. The court determined that the proof demonstrated that Mr. McDill was close to the plant operation and was available to do his job. It found, therefore, that Mr. McDill fulfilled his obligation to GroMoor by moving to Hernando, Mississippi.

## Issues

The sole issue raised on this appeal is:

Whether the trial court erred in declining to award damages to Drexel Chemical Company, Inc. for Gerald McDill's failure to satisfy his obligation to move his family to the Memphis area.

## Standard of Review

Because the trial court adjudicated this case without a jury, we review the decision *de novo* upon the record and presume the correctness of the trial court's factual findings. Tenn. R. App. P. 13(d); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). We will not reverse the trial

court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). If the trial court fails to make findings of fact, however, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). On the other hand, we review the trial court's application of law *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## Analysis

A plaintiff alleging breach of contract bears the burden of proving 1) the existence of an enforceable contract, 2) nonperformance amounting to a breach of contract, and 3) damages caused by the breach of contract. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006). The parties do not dispute that they had an existing and enforceable oral agreement which covered McDill's employment generally. They do, however, dispute what conditions, if any, Drexel placed on receiving the $10,000.00 relocation fee. As the moving party, it is Drexel's duty to prove by a preponderance of the evidence that McDill breached the employment agreement by failing to move his entire family into the Memphis area. *See id.*

A party seeking to enforce an oral agreement must establish that there was mutual assent to sufficiently definite terms. *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). The parties have inconsistent positions regarding the terms of the relocation fee. At trial, Drexel presented testimony that McDill was required to move to Memphis and that the $10,000.00 moving allowance was to relocate his entire family to the Memphis area. McDill, on the other hand, testified that Drexel did not place any qualifications on the $10,000.00 moving allowance besides the general employment condition that he move to the city where the plant was located.

It is apparent to us that the trial judge made a credibility determination and credited McDill's testimony regarding the terms of the employment offer that was presented to him. McDill testified that the moving expenses were for him to move to the Memphis area and there was no requirement that his family also relocate. We will not reevaluate a trial court's assessment of a witness' credibility absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We do not believe that there is clear and convincing evidence to contradict McDill's testimony that Drexel, in definite terms, required McDill to move his family to the Memphis area before he could receive the $10,000.00 relocation fee. We cannot say, therefore, that McDill breached his employment agreement with Drexel by moving to the Memphis area without his family.

## Conclusion

For the foregoing reason, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Drexel Chemical Company, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE