IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2019 Session

## RICHARD J HARTIGAN ET AL. v. ARNOLD BRUSH

Appeal from the Chancery Court for Roane County
No. 2015-124     Frank V. Williams, III, Chancellor

_____

No. E2019-00262-COA-R3-CV
_____

This is an action to recover damages for a purported buyer's breach of a contract to purchase improved residential real property. The trial court awarded Sellers damages calculated as the difference between the contract price and the amount for which the home sold one year after the breach. It also awarded Sellers and both realty companies prejudgment interest. On appeal, Appellant asserts the trial court erred in its determination of damages. He contends that, under the circumstances, an appraisal of the property performed at the time of breach demonstrates a substantially greater real market value than the sales price. Appellant also appeals the trial court's calculation of the amount of prejudgment interest awarded to Sellers and the realty companies. Because the trial court made no findings of fact with respect to the fair market value of the property at the time of breach, we remand this matter for further findings and, if necessary, recalculation of the damages and prejudgment interest awarded to Sellers. We also remand this matter to the trial court to recalculate the amount of prejudgment interest to be awarded to the realty companies.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jerrold L. Becker, Knoxville, Tennessee, for the appellant, Arnold Brush, in his individual capacity and as Administrator of the Estate of Pamela Sue Brush.

Sharon Reynolds Clark, Kingston, Tennessee, for the appellees, Richard J. Hartigan, Leila R. Hartigan, James M. Henry d/b/a Coldwell Banker Jim Henry & Associates, and Lakeway Realty Group, Inc.

# OPINION

## I. FACTS AND PROCEDURAL HISTORY

This appeal arises from the trial court's judgment awarding damages and prejudgment interest to Plaintiffs in an action for breach of contract to purchase residential real property. In 2007, Plaintiffs Richard J. Hartigan and Leila Hartigan (collectively, "Sellers") built a five-thousand square foot custom home on 1.3 acres of real property in the Highland Reserve subdivision in Kingston, Tennessee, at a cost of approximately $951,000. The property sits on a ridge approximately 300 feet above the Tennessee River and has water views from all sides. The Highland Reserve subdivision is a gated community and offers amenities including a swimming pool, a pavilion, and a pond which are available for use by the homeowners.

In August 2014, the Hartigans engaged a realtor for a term of six months to sell the home. The realtor did not show the home during that time. In April 2015, the Hartigans engaged another realtor, Kathy May Martin with James M. Henry d/b/a Coldwell Banker Jim Henry & Associates ("Coldwell Banker"). The Hartigans' listing agreement with Ms. Martin provided for a listing price of $750,000 and a realtor's commission of six percent.

In Spring 2015, Defendants Arnold Brush and wife, Pamela Brush decided to relocate from Arizona to Tennessee. In May 2015, the Brushes entered into an exclusive buyer representation agreement with Carol Ann Buchanan of Lakeway Realty Group, Inc. ("Lakeway Realty"), to act on their behalf. The agreement, which expired on November 16, 2015, provided for Lakeway Realty to be paid a three-percent commission on the sales price of property purchased by the Brushes.

In June 2015, the Brushes made an offer to purchase Sellers' property for $675,000. The Brushes requested a closing date of July 14, 2015, "or any other date of Seller's choice before Labor Day, September 7, 2015." Sellers counter-offered at a sales price of $712,000 and a closing date of July 23, 2015, "or any day prior to Labor Day." The Brushes accepted Sellers' counter-offer on June 16, 2015, and the Brushes deposited earnest money in the amount of $6,000 with Lakeway Realty.

Several appraisals of the property were performed as the Brushes sought financing for the purchase. An appraisal conducted for Quicken Loans valued the property at $640,000. On the advice of Ms. Buchanan, the Brushes decided to seek financing from a local lender, Peoples Home Equity, Inc. ("Peoples Home Equity"). An appraisal performed by the Thomas Fuller Appraisal Company for Peoples Home Equity in July 2015 valued the property at $730,000. The parties set a closing date of August 11, 2015, and a final walk-through was conducted on August 9. Peoples Home Equity determined an additional appraisal was necessary, however, and the parties were unable to close on

August 11. An appraisal performed by Appraisal Management Specialists for Peoples Home Equity on August 12, 2015, valued the property at $712,000.

Peoples Home Equity neither approved nor denied the Brushes' financing application, and the Brushes chose to forfeit their earnest money and withdraw from the purchase agreement on August 27, 2015. On September 27, 2015, the Brushes entered into a contract to purchase a home in Gallatin, Tennessee, at a purchase price of $575,000. They closed on the Gallatin property on November 25, 2015.

Sellers relocated to Michigan just prior to the anticipated August 11, 2015 closing date, leaving the property vacant but continuing to maintain it in good condition. Coldwell Banker continued to market the property. The listing price was reduced to $590,000 and reduced again at some point prior to the property eventually selling for $550,000 in October 2016.[1]

On November 12, 2015, Sellers, Coldwell Banker, and Lakeway Realty (collectively, "Plaintiffs") filed an action for breach of contract against the Brushes in the Chancery Court for Roane County. In their complaint, the Hartigans sought specific performance of the June 2015 purchase agreement, special damages arising from the breach, prejudgment interest, attorney's fees, and costs. They prayed in the alternative for an award of damages for breach of contract, special damages, prejudgment interest, attorney's fees, and costs. Coldwell Banker sought damages in the amount of $25,632 as a third-party beneficiary of the purchase agreement, in addition to prejudgment interest, attorney's fees, and costs. Lakeway Realty sought damages in the amount of $21,360, prejudgment interest, attorney's fees, and costs. In January 2018, Lakeway Realty filed an amended complaint seeking additional damages under the May 2015 exclusive buyer representation agreement. In its amended complaint, Lakeway Realty asserted that it was entitled to a commission of three percent of the purchase price of the property purchased by the Brushes in Gallatin. It sought a judgment in the amount of $17,250 plus prejudgment interest, attorney's fees, and costs.

The Brushes answered the complaint in March 2016, generally denying Plaintiffs' allegations of breach and that Plaintiffs were entitled to a judgment. The Brushes further asserted that they had been unable to secure financing, and that the financing contingency contained in the June 2015 purchase agreement accordingly had not been fulfilled. Pamela Brush died in October 2016, and Defendant Arnold Brush was appointed Administrator of her estate. By agreed order entered March 24, 2017, the matter subsequently proceeded against Arnold Brush ("Mr. Brush") in his individual capacity and as Administrator of the Estate of Pamela Sue Brush.

---

[1] The record is not clear as to the timing or the amount of the reduction of the list price for the property.

The trial court heard the matter on October 22, October 26, and December 6, 2018. The trial court determined that Mr. Brush was unable to demonstrate that the Brushes were denied lending, specifically finding that "[t]he fact that the Buyers were unable to secure lending at the rate of interest originally applied for was insufficient to show lending was unavailable." It further found that the Brushes' failure to close on the property constituted a breach of the purchase agreement.

The trial court entered a judgment in favor of Sellers in the amount of $162,000, the difference between the purchase price of $712,000 set-out in the purchase agreement and the 2016 sales price of $550,000. It found that Mr. Brush was entitled to a credit in the amount of $6,000 for the earnest money forfeited under the purchase agreement. The trial court further determined that Sellers were entitled to additional damages in the amount of $28,185.15 for costs incurred from September 7, 2015, until the property was sold in 2016.

The trial court found that Coldwell Banker was entitled to a judgment in the amount $25,632 for amounts due under the purchase agreement, and credited the Brushes with $19,800 against the award for the commission Coldwell Banker received following the sale of the property in 2016. The trial court awarded Lakeway Realty damages in the amount of $21,360 for damages under the purchase agreement and exclusive buyer representation agreement.

The trial court awarded Plaintiffs attorney's fees in the amount of $29,007.30. It found that Plaintiffs were entitled to prejudgment interest in the total amount of $39,203.79. The trial court awarded the Hartigans a judgment in the total amount of $225,688.98. It awarded Coldwell Banker a judgment in the total amount of $20,447.86. Lakeway Realty was awarded a judgment in the total amount of $35,251.40. The trial court entered final judgment in the matter on January 15, 2019, and Mr. Brush filed a timely notice of appeal to this Court.

## II. ISSUES PRESENTED FOR REVIEW

Mr. Brush presents the following issues for our review:

1. Did the Trial Court err in its calculation of damages awarded to Sellers for breach of contract?

2. Did the Trial Court err in its calculation of prejudgment interest awarded to Sellers?

3. Did the Trial Court err in its calculation of prejudgment interest awarded to the Appellee Coldwell Banker?

## III. STANDARD OF REVIEW

"The choice of the proper measure of damages is a question of law to be decided by the court." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227-228 (Tenn. Ct. App. 2006) (citation omitted). We review a trial court's determinations on questions of law *de novo*, with no presumption of correctness. *Id.* If it has applied the proper measure of damages, the trial court's valuation of property is essentially a question of fact. *Id.* We review a trial court's factual findings *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. *Id.* (citations omitted).

## III. DISCUSSION

Mr. Brush does not appeal the trial court's determination that an enforceable contract existed between the parties. The issues presented for our review are confined to the trial court's calculation of the amount of damages awarded to the Hartigans, the calculation of prejudgment interest awarded to the Hartigans, and the calculation of prejudgment interest awarded to Coldwell Banker.

### A. Award of Damages and Prejudgment Interest to the Hartigans

We turn first to the trial court's award of damages and prejudgment interest to Sellers. Mr. Brush argues that the trial court erred by calculating the contract damages in this case as the difference between the June 2015 contractual purchase price of $712,000 and the October 2016 sales price of $550,000. Mr. Brush asserts the August 2015 appraised value of $712,000 accurately reflects the market value of the property at the time of breach in August 2015. Accordingly, he claims that the Hartigans are not entitled to an award of damages or prejudgment interest on those damages.[2]

The measure of damages to be awarded in an action for breach of contract for the purchase of real property is the difference between the contractual purchase price and the value of the property "at the time set for closing." *Sec. Land Co. v. Touliatos*, 716 S.W.2d 918, 921 (Tenn. 1986), *opinion modified on reh'g,* 721 S.W.2d 250 (Tenn. 1986). "'The fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell.'" *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (quoting *Nashville Hous. Auth. v. Cohen,* 541 S.W.2d 947, 950 (Tenn. 1976)). We have noted, however, that the term "fair market value" has not been well-defined by the appellate courts. *Eastman Credit Union v.*

---

[2] The amount of special damages awarded to the Hartigans has not been appealed.

*Bennett*, No. E2015-01339-COA-R3-CV, 2016 WL 1276275, at *5 (Tenn. Ct. App. Mar. 31, 2016). We have cited with approval the definition of fair market value as: "'The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.'" *Id.* (citing *Cutshaw v. Hensley,* No. E2014-01561-COA-R3-CV, 2015 WL 4557490 at *5 (Tenn. Ct. App. July 29, 2015).

"'The party seeking damages has the burden of proving them.'" *Hatchel*, 223 S.W.3d at 229 (quoting *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 703 (Tenn. Ct. App.1999)). Whether an appraisal or subsequent sale price most accurately reflects the fair market value of a property at the time of breach is driven by the factual circumstances of the case. *See id.* at 231-32.

We have observed that, in some circumstances, "the amount a seller is eventually able to obtain for the property may constitute evidence of its fair market value at the time of the breach." *Id.* at 231. However, "[i]n order for the price received at a subsequent sale to represent the fair market value of the real property, the subsequent sale must be conducted under circumstances similar to those present at the initial sale and in an arms-length fashion." *Id.* at 232 (citation omitted). The circumstances surrounding a subsequent sale, including the seller's motivation "to achieve the highest possible price for the property[,]" are factors to be considered by the trial court when determining whether a subsequent sales price fairly reflects the fair market value of the property at the time of breach. *Id.* at 232-33. We also have observed that, "[u]nder some circumstances, an appraisal may provide a more accurate measure of the fair market value than the actual selling price[.]" *Simpson v. Golden Serv. Realty & Auction, Inc.*, No. 02A01-9509-CH-00203, 1996 WL 732487, at *4 (Tenn. Ct. App. Dec. 23, 1996). This is particularly true in circumstances under which a seller is "under a compulsion to sell." *Id.*

In this case, although the trial court awarded damages in an amount equal to the difference between the June 2015 contract price and the October 2016 selling price, the trial court's order includes no findings with respect to the fair market value of the property at the time of breach in August 2015. Although the trial court noted the impact of the 2008 financial downturn on the housing market in general, the trial court made no findings with respect to the circumstances surrounding the 2016 sale of the property; with respect to why or when the sales price was reduced; with respect to the appraised value of the property by three appraisers in June, July, and August 2015; or as to whether, in light of the circumstances of this case, the substantially reduced sales price accurately reflected the real market value of the property at the time the Brushes breached the contract in August 2015. The trial court's relevant findings as to the award of damages due to the Hartigans were:

> The Buyer's failure to close per the terms of the Purchase
> Agreement was a breach of the Buyer's obligations per the terms of the

Purchase Agreement . . .

. . . .

After the Buyers failed to close. . . Sellers continued to market the Property for sale in a manner and method substantially similar to the method and manner used to market the Property when the Buyers placed their offer.

. . . .

The Plaintiffs, Hartigans, are entitled to damages for the value of the property in the amount of the $162,000.00; the difference between the Purchase Price as set out in the Purchase Agreement, in the amount of $712,000.00, and the price [for which] the Plaintiffs were ultimately able to sell the Property to Heckman in 2016 in the amount of $550,000.00.

We additionally observe the following exchange between the trial court and counsel for Plaintiffs:

COUNSEL: The law is, in the cases that I cited to the Court, the measure of damages for the breach -- and that would be for the Hartigans -- for the breach of the contract is the measure of the fair market value before and the fair market value after the breach.

THE COURT: Right.

COUNSEL: And the way the law says to calculate that is that you take the contract price at the first contract, less the contract price on the second sale.

THE COURT: I'll agree with –

COUNSEL:  It doesn't say anything about the net proceeds.

THE COURT: I agree.

We accordingly vacate the award of damages to the Hartigans and remand this matter to the trial court for further findings on this issue and, if necessary, a recalculation of damages.  The trial court may conduct further proceedings on this issue, if necessary. Because the amount of prejudgment interest is dependent on the damage award, the issue of the trial court's award of prejudgment interest to the Hartigans is pretermitted, and therefore vacated and remanded.

### B. Calculation of Prejudgment Interest to Coldwell Banker

"An award of prejudgment interest is within the sound discretion of the trial

court[.]" *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citations omitted). The "principles of equity" are foremost in guiding an award of prejudgment interest. *Id.* "[T]he purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Id.* (citations omitted). An award of prejudgment interest addresses damages incurred by a party "because they have been deprived of the use of that money from the time they should have received it until the date of judgment." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000). Prejudgment interest may not be appropriate under some circumstances, however, including "when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money." *Id.* at 83.

Mr. Brush asserts that the trial court erred by calculating the award of prejudgment interest to Coldwell Banker upon the entire $25,632 commission which was due under the purchase agreement. Mr. Brush asserts Coldwell Banker was not deprived of the use of this amount for the entire period between the time of breach and the date of judgment where Coldwell Banker recovered $19,800 when the property sold in October 2016. Mr. Brush asserts that prejudgment interest dating from October 3, 2016, should have been calculated on $5,562.00, the amount to which Coldwell Banker was denied during that period. In light of *Scholz*, we agree and vacate the award of prejudgment interest to Coldwell Banker. Therefore, this issue is also remanded to the trial court for recalculation of the award of pre-judgment interest due Coldwell Banker.

## IV. CONCLUSION

In light of the foregoing, the trial court's award of damages and prejudgment interest to the Hartigans is vacated, and this matter is remanded to the trial court for further findings and further proceedings, if necessary, consistent with this Opinion. The trial court's calculation of the amount of prejudgment interest awarded to Coldwell Banker also is vacated, and this issue is remanded to the trial court for recalculation of the award. Costs of this appeal are taxed to the Appellees, Richard J. Hartigan, Leila Hartigan, and James M. Henry d/b/a Coldwell Banker Jim Henry & Associates, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE