# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 8, 2012


## BROOKE BUTTREY v. HOLLOWAY'S, INC., ET AL.


**Appeal from the Circuit Court for Maury County**
**No. 11017     Jim T. Hamilton, Judge**

---


**No. M2011-01335-COA-R3-CV - Filed December 12, 2012**

---


A homeowner sued builders for the defective construction of a house, alleging breach of contract, intentional misrepresentations, and violations of the Tennessee Consumer Protection Act. The trial court dismissed the Tennessee Consumer Protection Act claims, but found the builders liable for intentional misrepresentations and breach of the contract by failing to build the house in a workmanlike manner. The trial court awarded the homeowner the full amount she paid to have the house built as well as her attorney's fees. The builders appealed, claiming the evidence did not support the amount of damages awarded, the evidence did not support the court's finding of intentional misrepresentation, and the homeowner was not entitled to attorney's fees. We modify the damages awarded to the homeowner to conform to the evidence presented. We reverse the court's award of attorney's fees, and we reverse the court's finding that the builders intentionally misrepresented material facts.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified in Part and Reversed in Part**


PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.


Jason Mitchell Chaffin and Nathaniel Mills Colburn, Nashville, Tennessee, for the appellants, Holloway's, Inc., Rick Holloway, and Jennifer Holloway.


Stacy S. Neisler, Spring Hill, Tennessee, for the appellee, Brooke Buttrey.

## OPINION

## I. BACKGROUND

Brooke Buttrey and her then-husband Trey Buttrey entered into a contract with Holloway's, Inc. on June 12, 2003, in which Holloway's agreed to build a house for the Buttreys for the price of $141,600.[1] Rick Holloway and Jennifer Holloway, the president and vice president of Holloway's, signed the contract on behalf of Holloway's (all defendants will be referred to collectively as the "Holloways"). In the contract the Holloways agreed to construct the house "in a workman-like manner and in compliance with all building codes and other applicable laws." The contract included a one-year warranty from the date the house was completed.

Ms. Buttrey testified that she and her family moved into the house in December 2003 and immediately began noticing problems with the house. Ms. Buttrey compiled a list of problems she claims she notified the Holloways of beginning in December 2003. She testified that she informed the Holloways of all the problems in the house within the one-year warranty period set forth in the contract. The items on Ms. Buttrey's list include, but are not limited to, the following: loose exterior siding; damage to the outside brick where a bulldozer hit the house during construction; lack of any access to the attic; a front door that would not open all the way because the indoor stairs were built too close to the door; mismatching toilet and sink; improper grading of the house, causing water to collect underneath the house in the crawl space; improperly built stairs and railings; doors that would not close because they were hung out of square; cracking of tiles in the kitchen where backing board was not used; and leaks in the plumbing located behind the walls.

Ms. Buttrey testified that the Holloways refused to address any but the most minor of the problems she complained about, claiming she was being "too picky." Ms. Buttrey filed a complaint against the Holloways in October 2004 alleging breach of contract and breach of an express warranty, breach of the implied warranty of good workmanship and materials, fraud, misrepresentation, and violation of the Tennessee Consumer Protection Act, codified at Tenn. Code Ann. §47-18-101 *et seq.*[2] Ms. Buttrey sought compensatory damages, punitive damages, as well as treble damages and attorney's fees as allowed by the Tennessee

---

[1]The parties modified their contract on September 10, 2003, and Ms. Buttrey agreed to pay Holloway's an additional $1,672.86 for a change in the plans. The total Ms. Buttrey agreed to pay for the house was $143,272.86.

[2]The Buttreys divorced before the complaint was filed in October, and Ms. Buttrey is the sole plaintiff in this case. Ms. Buttrey changed her surname to Davis after filing her complaint. We will continue to refer to her as Ms. Buttrey to avoid unnecessary confusion.

Consumer Protection Act.

Ms. Buttrey presented testimony and written reports from a home inspector, a structural engineer, and a contractor, all of whom testified to the poor workmanship the Holloways used in building Ms. Buttrey's house. The home inspector testified that he had inspected between 800 and one thousand homes, and that Ms. Buttrey's home contained the most defects of any he had inspected. Both the home inspector and the structural engineer prepared a report identifying the structural defects.

In testifying about defects with the interior and exterior walls, the home inspector explained:

> The interior walls, there were several areas where the wall was actually cracked, which indicates a structural problem, a settlement problem. The exterior walls, the wood siding was installed incorrectly. There were large gaps between some of the siding where the planks of siding joined. The joints were basically upside down.

> You basically have a diagonal cut in the joint to make it fit much like you do in a corner molding, and the joints were built like this so that water shedding down the wall would be able to get behind the siding, whereas if you overlapped it from the top down, water would shed over siding, which is the purpose of the siding.

The home inspector's report described in detail a number of defects needing repair, including foundation problems caused by improperly installed joists, grading and drainage problems including exposure of the septic tank, missing roof underlayment, lack of access to the attic, gaps in the siding allowing the water to penetrate the sub-wall, cracking of interior walls indicating stress and settlement, improper installation of the kitchen tile, and problems with multiple doors.

The structural engineer testified about structural defects, including but not limited to: improper installation of the ground floor subfloor and floor joists; moisture infiltration of the crawlspace due to lack of vapor retarding membrane; the duct system was not properly sealed; one of the I joist headers supporting the ends of a floor joist was improperly cut to allow installation of a plumbing pipe through the floor system; improper installation of the kitchen tile; absence of a moisture barrier wrap under outside wooden siding; improper installation of wood siding; lack of requisite flashing on window and door openings; and the grade of the slope of the ground adjacent to the house was inverted in some places, causing water to collect underneath the house.

The structural engineer also testified that several of the defects he noted constituted building code violations. He explained that the Holloways did not follow the industry standard when they installed the tiling in the house or the floor framing. When asked whether the house was built in a workmanlike manner, the structural engineer responded:

> I believe because of these two items, simply the tile installation and the floor joist installation, that that's not the case. Workmanlike manner is indicative of providing a product that at least meets industry standard. That's typically what's upheld as what is the level of quality, so workmanlike would represent that it's installed to at least the minimum standards of the industry, and if the governing bodies or manufacturers that set those installation requirements, if the installation doesn't meet those requirements, then I would say in my professional opinion that it's not constructed in a workmanlike manner.

A contractor who testified on behalf of Ms. Buttrey testified that he prepared an estimate of what it would cost to repair the defects identified in the structural engineer's report. This estimate was marked as an exhibit and showed that it would cost $32,673.79 to repair the defects. The contractor made clear, however, that this price did not represent the total amount Ms. Buttrey would have to pay to have her house completely repaired.

Following the close of Ms. Buttrey's proof, the Holloways moved for a directed verdict on the issue of fraud. The Holloways also asked the court to dismiss Ms. Buttrey's consumer protection claim because Ms. Buttrey's evidence did not show the Holloways engaged in willful or intentional conduct. The court dismissed Ms. Buttrey's consumer protection claim only and allowed her to proceed with her other causes of action.[3]

After the defendants presented their evidence, the trial court *sua sponte* issued subpoenas to the three individuals who conducted periodic code inspections during the Holloways' construction of the house. In response to questions the court asked, each inspector testified about building code violations they found at different steps of the inspection process, and about numerous reinspections that were necessary due to the Holloways' failure to comply with the code's requirements.

---

[3]The Holloways also asked the court to dismiss Ms. Buttrey's claim that Mr. and Mrs. Holloway should be liable for the corporation's liabilities because the corporation was merely a sham. The court denied this request and held Ms. Buttrey could pierce the corporate veil, with the result that Mr. and Mrs. Holloway would be personally liable for damages awarded Ms. Buttrey. The Holloways did not appeal this determination, and we therefore need not address this issue further.

The inspectors testified that the house was "not square," "out of plumb," and that it was built using very poor workmanship. One of the inspectors testified that he had to go out to inspect the house on different occasions due to continuing infractions with respect to the plumbing and framing, but eventually the house was brought into compliance with the code's requirements. This inspector testified that he eventually passed the house because on his final inspection, "Everything was okay temporarily to where I felt I needed to pass it, but whether it stayed that way I can't testify to that."

When the trial court asked the inspector if there was anything he could say that needed to be done to the house, the witness answered,

> I can tell you it was very poor workmanship and that - - it met code at the time.
> . . . It probably would not remain in that condition very long.

When Ms. Buttrey's attorney followed up with additional questions to this inspector, he explained his comments:

> It was very poor workmanship. It was not square, it was not plumb. Everything was done poorly. When you have a job that's got poor workmanship like that, the duration of the home or the ability to last is not going to be there like a home that's well built, and even though we're on the job site doing inspections, we're only there for maybe a total of three or four hours between all the inspectors that were out there . . . . [T]here's a lot of things that an inspector can't see, even when they go out for those short inspection times, and from the workmanship I saw there was probably a lot of things that were left out.

The court asked this inspector how he would grade the house on a scale of A to D, and the inspector responded "D minus." The court then asked what the inspector would estimate it would cost to bring the house up to a grade A house, and the inspector responded that it would take "a lot . . . a substantial amount of money."

The two other inspectors subpoenaed by the court also testified about problems they discovered when they made a site visit to the house. One testified that he noticed that the Holloways were using rebar, or reinforcement steel, on the footings that was not standard. On a later inspection, he found several violations in the foundation including vent location, improper bolt location, and a poor job on single stack piers with gaps needing repointing in the footer. When he reinspected the corrections had not been made. A further reinspection was made by someone else, and he did not return to Ms. Buttrey's house for any additional

inspections.

## II. TRIAL COURT'S RULING

Following the close of all evidence, the trial court issued an Order that included, *inter alia*, the following findings of fact:

2. The Defendant, Rick Holloway, intentionally misrepresented the condition of the home at issue in this matter to the Plaintiff.

3. The Defendant, Rick Holloway, intentionally misrepresented the quality of the workmanship and materials used to construct the home at issue in this matter to the Plaintiff.

4. Plaintiff has suffered significant loss as a result of the intentional misrepresentations of the Defendant, Rick Holloway.

5. The home at issue in this matter was not constructed in a good and workmanlike manner.

6. Plaintiff has suffered significant loss as a result of the home at issue in this matter not being constructed in a good and workmanlike manner.

7. Defendants materially breached the contract dated June 12, 2003 (hereinafter "Contract") and the express warranty contained therein.

8. Plaintiff has suffered significant loss as a result of the breach of the Contract by the Defendants and the express warranty contained therein.

9. Defendant breached the implied warranty of good workmanship and materials.

10. Plaintiff has suffered significant loss as a result of the breach of the implied warranty of good workmanship and materials by the Defendants.

11. No evidence has been presented that the home at issue could be modified, repaired and improved (to the condition in which the home should have originally been constructed under the Contract) for less

than the amount that Plaintiff paid the Defendants under the Contract, which was One Hundred Forty-Three Thousand Two Hundred and Seventy-Two Dollars and No Cents ($143,272.00).

The court then ordered, adjudged, and decreed the following:

1.  The Plaintiff, Brooke Davis (formerly Brooke Buttrey) is hereby granted judgment against the Defendants, Rick Holloway and Jennifer Holloway, for which execution may issue if necessary, in the amount of *One Hundred Forty-Three Thousand Two Hundred and Seventy-Two Dollars and No Cents ($143,272.00)*.

2.  The Plaintiff, Brooke Davis (formerly Brooke Buttrey) is hereby granted an additional judgment against the Defendant, Rick Holloway, for which execution may issue if necessary, in the amount of *Nine Thousand One Hundred Eighteen Dollars and No Cents ($9,118.00)*, which represents the total amount of fees paid and/or owing by Plaintiff to Stacy S. Neisler for her services as legal counsel for Plaintiff in this matter.

The Holloways appealed.

### III. APPEAL

In this appeal, the Holloways raise the following three issues: (1) whether the trial court erred in the amount of damages awarded; (2) whether the trial court erred in its award of attorney's fees; and (3) whether the evidence preponderates against the trial court's determination that Ms. Buttrey had established all the elements of intentional misrepresentation.

Our appellate review of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

The parties' contract included a provision that the work would be "completed in a workman-like manner." Even without the express language of the contract, a warranty of good workmanship and materials is implied in all contracts for newly built dwellings, unless

expressly disclaimed. *Federal Ins. Co. v. Winters,* 354 S.W.3d 287, 291-293 (Tenn. 2011); *Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538, 541-42 (Tenn. 1982).

The trial court found the house was not constructed in a workmanlike manner. This finding is amply supported by the evidence. Accordingly, the trial court concluded that the Holloways breached the parties' contract. In this appeal, the Holloways do not challenge that holding.

## IV. THE CLAIM FOR INTENTIONAL MISREPRESENTATION

The Holloways argue there was insufficient evidence to support the trial court's findings that Mr. Holloway intentionally misrepresented the condition of the house to Ms. Buttrey, that he intentionally misrepresented the quality of the workmanship and materials used to construct the house, and that Ms. Buttrey suffered significant loss as a result.

A plaintiff claiming fraudulent or intentional misrepresentation must prove the following:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) the plaintiff reasonably relied on the misrepresented material fact; and 6) the plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck*, 249 S.W.3d 301, 311 (Tenn. 2008).

The Holloways emphasize Ms. Buttrey's assertions regarding representations made prior to the execution of the construction contract. In her Complaint, Ms. Buttrey asserted that, prior to execution of the contract, Mr. Holloway "represented to Plaintiff that he was an experienced home contractor and that the Home would be constructed with good workmanship and materials." During the trial Ms. Buttrey testified to the following with regard to Mr. Holloway's representations:

> Q: When you approached Mr. Holloway about building this home, did he make any representations to you about his abilities in terms of being a builder?

A:     He made himself seem very competent with decades of experience, if I remember correctly, about building in Michigan and several years and several houses. If that's experience, then yes.

Ms. Buttrey introduced no evidence to show Mr. Holloway did not have decades of experience or that he did not build houses in Michigan. With regard to any alleged representation as to the workmanship to be used in constructing the house, which is essentially the same as the warranty in the contract, those representations related to future acts or conduct. They did not constitute representations of an existing or past fact. Thus, as to these specific allegations, Ms. Buttrey failed to prove all the essential elements of her claim for intentional misrepresentation.

However, Ms. Buttrey points out evidence regarding alleged misrepresentations the Holloways made during or after the construction of the house. These include telling Ms. Buttrey she was being "picky" when they knew the house had defects; and admission by Mr. Holloway that he knew the house was partially supported by insufficient foundation in places without disclosing that safety issue to Ms. Buttrey.[4] However, we can find no evidence that these particular representations, even if false when made and made knowingly, caused Ms. Buttrey to suffer any damages as a result of her reliance on the alleged misrepresentations themselves, as distinguished from damages arising from the poor workmanship itself.

The fact that the Holloways breached the contract does not necessarily support a holding of intentional misrepresentation made prior to the execution of the contract or during its construction. Ms. Buttrey failed to prove all the essential elements of a claim for intentional misrepresentation, and we must therefore reverse the trial court's holding to the contrary.

## V. THE DAMAGES AWARD

Although we agree with the Holloways that the evidence preponderates against the trial court's findings that they engaged in intentional misrepresentations, this error does not alter the fact that the Holloways breached the parties' contract and are liable for damages as a result of that breach. The court did not specify that it was awarding Ms. Buttrey damages as a result of the Holloways' breach of contract as opposed to the Holloways' intentional misrepresentations, but the wording of the trial court's award implies that the damages are for the defects in the construction of the house and the lack of good workmanship, which are

---

[4]Ms. Buttrey's brief cites other representations, but those appear to have been made to third parties.

for breach of contract.

No evidence has been presented that the home at issue could be modified, repaired and improved (to the condition in which the home should have originally been constructed under the Contract) for less than the amount that Plaintiff paid the Defendants under the Contract, which was One Hundred Forty-Three Thousand Two Hundred and Seventy-Two Dollars and No Cents ($143,272.00).

The Holloways contend that the amount awarded was excessive. The award amount is equal to what Ms. Buttrey paid the Holloways to build her house. The Holloways argue the house has value, Ms. Buttrey is still living in it and has lived in it for several years, and the court's award erroneously puts Ms. Buttrey in a better position than she would be in had the contract been performed as contemplated.

In a breach of contract action, damages resulting from the breach are a necessary element of the claim and, therefore, the claimant has the burden of proving damages at trial. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291(Tenn. 2011); *ARC Life-Med, Inc. v. AMC-Tenn, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). On appeal, the appellant has the burden of showing the evidence presented at trial preponderates against the trial court's findings of fact. *BancorpSouth Bank v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (citing *Dunlop Tire & Rubber Corp. v. Serv. Merch. Co.*, 667 S.W.2d 754, 758 (Tenn. Ct. App. 1983) (further citation omitted)).

## A. Measure of Damages

The choice of the proper measure of damages is a question of law to be decided by the court. *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App.1998). Accordingly, when we review a trial court's selection of a damages measure, our review is *de novo* with no presumption of correctness. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 537 (Tenn. Ct. App. 2000).

The purpose of assessing damages in a breach of contract action is to make the non-breaching party whole, to place the non-breaching party "in the same position he would have been in had the contract been performed. *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995). Therefore, herein the damages appropriately awarded by the trial court should have been designed to place Ms. Buttrey in the position she would have been in had the contract been performed as contemplated. *BancorpSouth Bank*, 223 S.W.3d at 228; *GSB Contractors v. Hess*, 179 S.W.3d at 538; *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App.1990); *Edenfield v. Woodland Manor*, 462 S.W.2d 237, 241

(Tenn. Ct. App. 1970).

In cases involving breach of a construction contract by the party agreeing to provide services to construct something, the general measure of damages available to the purchaser of the services is:

> (a) For defective or unfinished construction he can get judgment for either
>
> (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
>
> (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff; if construction and completion in accordance with the contract would involve unreasonable economic waste.

RESTATEMENT (FIRST) OF CONTRACTS § 346I(1), Damages For Breach Of A Construction Contract (2012).

Tennessee courts have adopted that measure of damages, which has been explained as follows:

> As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure if properly completed.

*Edenfield*, 462 S.W.2d at 241.

Stated more succinctly, when a contractor fails to perform in a workmanlike manner, there are two ways of measuring damages: cost of repair and diminution in value. *Wilkes v. Shaw Enter., LLC*, 2008 WL 695882, at *9-10 (Tenn. Ct. App. Mar. 14, 2008). Usually, the measure of damages will be the cost of repair, but diminution in value may be used as the measure of damages in certain circumstances. *Id*.

As this court has put it, "Generally, the measure of damages will be the cost [of] repair unless the repairs are not feasible or the cost is disproportionate to the [diminution] in value." *GSB Contractors*, 179 S.W.3d at 543. If the cost of repairs is "disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as the measure of damages." *Id*. Furthermore, "the burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions.'" *Id*. (quoting *Nutzell v. Godwin*, 1989 WL 76306, at *2 (Tenn. Ct. App. July 13, 1989)).

If the defendant fails to meet its burden to show the cost of repairs is unreasonable when compared with the diminution in value, the trial court must base its measure of damages on the cost of repairs. *GSB Contractors*, 179 S.W.3d at 543-44. Obviously, to meet that burden, the defendant must produce proof of the building's diminution in value in order to provide a basis for comparison. *Id*.

In the case before us, neither party produced any evidence regarding the value of the house or the impact of the defects on the value of the house. Since there was no proof as to its diminution in value, the proper measure of damages herein is the cost to repair the defects.

The only explanation the court gave for its award of $143,272.00 was its finding that "No evidence has been presented that the home at issue could be modified, repaired and improved (to the condition in which the home should have originally been constructed under the Contract) for less than the amount that Plaintiff paid the Defendants under the Contract . . . ." To the extent that language can be interpreted to place the burden on the defendant to prove the cost of repair, that would be an inappropriate allocation of the burden of proof. Ms. Buttrey, as the plaintiff, had the burden to prove that she suffered damages and the amount of those damages.

The trial court awarded as damages the amount of the cost of the contract for construction of the house. Although there is precedent for awarding a homeowner the price paid to have a house built, the proof must include testimony that the house has no value or that the cost for repairing the house equals the amount paid to have it built. *See Bowling v. Jones*, 300 S.W.3d 288, 296 (Tenn. Ct. App. 2008) (upholding trial court's judgment that homeowners were entitled to damages in the amount of price paid where co-owner of house

testified house had no value).  There is no such proof in the record before us.

Further, as the Holloways point out, Ms. Buttrey has lived in the house since December of 2003 and has obtained value from that.  They also argue that the fact that the house has been occupied necessarily implies that it has some value.

The award of the entire contract price is a remedy when a contract is rescinded. "Rescission involves the avoidance or setting aside of a transaction.  It is an equitable remedy, available where the contract was induced by fraud or duress. . . . It is intended to return the parties to the positions they were in before the transaction took place." *Williamson v. Upchurch*, 768 S.W.2d 265, 271 (Tenn. Ct. App.1988) (internal citations omitted). Typically, "a purchaser who has been the victim of either fraud or mistake, upon rescission, is allowed to recover the consideration or purchase price he paid for the property." *Isaacs v. Bokor*, 566 S.W.2d 532, 538 (Tenn.1978).  However, rescission was not sought in this case, nor would it have been appropriate under these facts, principally where the contract had been performed.  While rescission is intended to return the parties to their positions as if the contract had never been entered into, damages for breach of a contract are designed to put the non-breaching party in the position she would have enjoyed had the contract been performed as contemplated.

Consequently, we must presume that the amount of damages awarded to Ms. Buttrey was intended to be the cost of repairs to correct the defects in the house and to bring it to the standard set out in the contract.

## B.  Amount of Damages

The Holloways argue that the proof at trial regarding the cost of necessary repairs was much less than the contract price and that, therefore, the trial court erred in awarding her more than she proved she was entitled to recover.

So long as the amount of damages awarded is within limits justified by the law, the amount awarded is a question of fact and is reviewed like other questions of fact. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352-53 (Tenn. Ct. App. 2007); *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 229. That is because "[d]eterminations concerning the amount of damages are factually driven." *Beaty v. McGraw*, 15 S.W.3d at 827(citing *Loftis v. Finch*, 491 S.W.2d 370, 377 (Tenn. Ct. App.1972)).

Because the amount of damages to be awarded in a particular case is a question of fact, *GSB Contractors,* 179 S.W.3d at 541, we review a trial court's findings as to the amount of damages *de novo* upon the record of the trial court, accompanied by a presumption of

correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). "We will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded." *Beaty*, 15 S.W.3d at 827.

Ms. Buttrey asked a contractor to prepare an estimate of the cost to fix the problems identified in the structural engineer's report. The contractor's written estimate for those repairs totaled $32,673.79. He further explained that his estimate "was a fairly narrow scope based on the conclusion portion of the engineering report."

Ms. Buttrey produced evidence that she paid the structural engineer $860 and the home inspector $300 to inspect her house and prepare reports. She also produced evidence that she spent $2,700 prior to trial to have some repairs made, and she produced receipts totaling $232.38 for items she purchased to fix additional problems in her house. These expenditures total $4,092.38.

There was no other evidence of a specific amount of costs for repair. As set out above, the trial court's award of $143,272 in damages must be interpreted as costs of repairs. Ms. Buttrey did not offer any testimony or other evidence that her house has no value or that she would have to pay $143,272.00 (or more) to fix the defects in the house. The only direct and specific proof regarding costs for repairs totaled only $36,766.17. There was, however, proof that other costly repairs would be needed.

The contractor testified that his estimate included only the major items identified in the structural engineer's report and did not address additional problems identified by Ms. Buttrey or the home inspector. The contractor further clarified that his estimate did not include what he referred to as the "resultant damage" based on the construction defects noted in the structural engineer's report. In other words, the contractor explained, "one of the things [the structural engineer] wanted to do is raise the floor, so we have not assumed any repairs necessary to repair the damage caused by raising the floor."

The contractor was then asked how he would determine the total amount Ms. Buttrey would have to pay to cover all the necessary repairs in the house:

Q:     And in order to determine the total amount that would need to be paid for [Ms. Buttrey] in order to cover all the necessary repairs in the home, would you have to go back out and examine all of the different reports that have been provided in the lists, and go back through and compile

an estimate, is that correct?

A:     That's correct, as well as some of the potentially hidden damage you would actually have to do some investigation in taking the siding off, drywall or both, so even after reviewing all those reports there could still be other damage.

In addition, the trial court asked one of the inspectors subpoenaed by the court his estimate of the cost to bring the house up to a grade A house, and the inspector responded that it would take "a lot . . . a substantial amount of money."

Ms. Buttrey provided no evidence of the amount it would cost to repair all the problems identified by her experts. Thus, Ms. Buttrey established that there were, in fact, real damages and that the total amount of damages was uncertain. The Tennessee Supreme Court recently reiterated the law regarding proof of damages, stating:

> This Court has recently reaffirmed the distinction between the existence and amount of damages. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn. 2008). "The existence of damages cannot be uncertain, speculative, or remote." *Id*. (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App.1999) (damages in tort); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App.1983) (damages for breach of contract)); *see also BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn. Ct. App.2006). "The amount of damages may be uncertain, however, if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages." *Hannan*, 270 S.W.3d at 10 (citations omitted); *see also Hatchel*, 223 S.W.3d at 230 ("[T]he evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages." (*citing Wilson v. Farmers Chem. Ass'n, Inc.*, 60 Tenn. App. 102, 444 S.W.2d 185, 189 (1969))). The burden of proving damages rests on the party seeking them. *Hatchel*, 223 S.W.3d at 229. In short, a plaintiff may recover damages when she offers " 'proof of damages within a reasonable degree of certainty.' " *Id*. at 230 (quoting *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App.1985)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012).

Thus, uncertain and speculative damages are prohibited only when the existence of damages is uncertain, and not when the amount of the damage is uncertain. *Moore Constr. Co., Inc. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App.1985) (citing *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App.1983)).

However, the evidence presented by the plaintiff must be sufficient to enable the trier of fact to make a fair and reasonable assessment of damages. *BancorpSouth Bank*, 223 S.W.3d at 230. While the party seeking damages is not required to prove the exact amount of her damages, there must be proof of damages within a reasonable degree of certainty. *BancorpSouth Bank*, 223 S.W.3d at 230; *Redbud Coop. Corp.*, 700 S.W.2d at 561.

"When there is substantial evidence in the record and reasonable inferences may be drawn from the evidence mathematical certainty is not required." *Cummins*, 667 S.W.2d at 765. However, the evidence must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages. *BancorpSouth Bank*, 223 S.W.3d at 230.

The evidence must "lay a foundation which will enable the trier of facts to make a fair and reasonable estimate, and the plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss." *Western Sizzlin' v. Harris*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987) (quoting *Stevens v. Moore*, 139 S.W.2d 710, 719 (Tenn. Ct. App. 1940) (itself quoting 15 Am. Jur. §23, at 414, 415)).

We must hold that the evidence preponderates against the trial court's finding as to the amount of damages suffered by Ms. Buttrey. There is simply no evidence to support awarding $143,272 in damages for repair costs. Ms. Buttrey proved an exact amount for repair of some of the defects in the house. She proved that there will be additional substantial costs for repair of other defects, but she did not prove an amount, estimate, or outside range for those additional costs or the total cost of repairs. There was no evidence that would serve as a basis for determining that $143,272 was reasonable.

The question becomes whether she provided sufficient evidence for the trial court or this Court to make a fair and reasonable assessment of the total cost of all the repairs that are needed to correct the defects due to the substandard workmanship.[5] We have carefully reviewed all the evidence, and it is clear that there exist needed repairs that were explicitly excluded from the contractor's estimate and that the cost of those repairs will be substantial. We think that the cost of the repairs excluded from the estimate will at least equal the cost of the repairs that were specifically included. Therefore, we modify the award of damages to Ms. Buttrey to $73,532.34, which includes the contractor's estimate, an equal amount for additional repairs that will be required, and Ms. Buttrey's out-of-pocket expenses outlined above.

## C. The Award of Attorney's Fees

The trial court awarded Ms. Buttrey her attorney's fees without explaining the basis for its award. As the Holloways point out, Tennessee follows the American Rule with regard

---

[5]We could remand this case for the trial court to make such an assessment and explain its basis. However, in the interest of judicial economy and to save the parties time and money, we choose to make the assessment ourselves based upon the record.

to attorney's fees, which means that litigants are required to pay their own attorney's fees unless there is a statute or agreement providing otherwise. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *see State ex rel. v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979) (rule in Tennessee is well-established that no party is entitled to award of attorneys' fees in absence of statute, contract, or recognized ground of equity so providing).

In her Complaint Ms. Buttrey sought attorney's fees pursuant to the Tennessee Consumer Protection Act, codified at Tenn. Code Ann. §47-18-101 *et seq.* (the "TCPA"). Following the close of Ms. Buttrey's proof, the trial court dismissed Ms. Buttrey's TCPA cause of action in response to the Holloways' motion for a directed verdict. She therefore has no right to recover her attorney's fees pursuant to the TCPA.[6] A review of the parties' contract reveals that it does not provide for the payment of attorney's fees in the event of litigation between the parties. Thus, Ms. Buttrey is not entitled to recover her attorney's fees pursuant to the contract.

Ms. Buttrey argues she is entitled to an award attorney's fees as special damages, citing the case *Ezell v. Graves*, 807 S.W.2d 700 (Tenn. Ct. App. 1991). That case involved the tort of libel of title, however, not a breach of contract or action for misrepresentation, as here, and the *Ezell* court's treatment of attorney's fees as special damages has no application to this case.

Ms. Buttrey next argues she is entitled to her attorney's fees as punitive damages. Ms. Buttrey sought punitive damages in her Complaint, but the court did not award her these damages. Punitive damages are meant to have a deterrent effect and are awarded in only the most egregious of cases. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). A trial court must find a defendant acted either intentionally, fraudulently, maliciously, or recklessly before punitive damages can be awarded. *Id.* The trial court did not find the Holloways acted fraudulently, maliciously, or recklessly, and we have reversed the trial court's findings that the Holloways intentionally misrepresented material facts. Moreover, attorneys' fees are meant to be compensatory, and it is therefore inappropriate to award attorneys' fees as punitive damages. *Miller v. United Automax*, 166 S.W.3d 692, 697 (Tenn. 2005) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906-07 (Tenn. 1999)).

---

[6]Ms. Buttrey did not appeal the trial court's dismissal of her TCPA claim.

We can find no ground to justify the court's award of attorney's fees to Ms. Buttrey. We therefore reverse the trial court's award of these fees to Ms. Buttrey.

## VI. CONCLUSION

For the reasons set forth above, we modify the breach of contract damages awarded to Ms. Buttrey from $143,272.00 to $73,532.34; we reverse the trial court's award of attorney's fees; and we reverse the trial court's finding that the Holloways intentionally misrepresented material facts that caused Ms. Buttrey to suffer damages. Costs of the appeal shall be taxed to the appellants, Holloway's, Inc., Rick Holloway, and Jennifer Holloway.

_____
PATRICIA J. COTTRELL, JUDGE